George Michael BARGAS, Jr., Appellant

v.

The STATE of Texas, Appellee.

Nos. 14-06-00795-CR, 14-06-00797-CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 13, 2008.

---

Leah M. Borg, Houston, for appellants.

Shirley Cornelius, Houston, for State.

Panel consists of Justices FOWLER, FROST, and SEYMORE.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant George Michael Bargas, Jr. challenges his convictions for two consolidated counts of aggravated sexual assault of a child, asserting in ten issues legal and factual insufficiency and a host of other complaints. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The complainant, Tina,[1] is appellant's daughter, who lived with appellant when she was between the ages of five and nine years old. The father and daughter lived in several different homes, residing first in a home in the Highlands and then moving

---

1. To protect the privacy of the complainant in this case, we identify her by a pseudonym, "Tina."

to Baytown when Tina was seven or eight years old.

Tina last saw appellant in the fall of 2003, before going to live with her maternal grandmother, Gloria Wilson. In May 2005, after watching a video at school on sexual abuse, Tina told a classmate that "something had happened to her." School officials met with Wilson and explained that Tina needed counseling. Though school officials did not specifically mention sexual abuse, Wilson suspected that Tina's bed-wetting, cowering, and fear of the dark resulted from Tina's having been sexually abused. To learn more from Tina, Wilson confronted Tina by telling Tina that she knew Tina had been sexually abused; although, in reality, Wilson knew nothing about any sexual abuse. When Wilson asked if anyone had touched Tina's "private parts," Tina responded that appellant had touched her in those places. Wilson tried to find out more information, but Tina did not want to talk about it. Wilson did not learn of the details of Tina's sexual abuse until later when she spoke with Tina's therapist, Priscilla Kleinpeter.

After Wilson reported the sexual abuse, Child Protective Services referred then ten-year-old Tina to the Children's Advocacy Center, where she was interviewed on videotape by forensic interviewer Shelly Bohannon. In that interview, Tina described the incidents of appellant's sexual abuse in specific detail.

Sexual assault nurse examiner Danielle Livermore examined Tina in the fall of 2005. Though she could not determine when the abuse took place and found no evidence of physical trauma, Livermore explained that the absence of medical evidence in examinations of sexually abused child victims is common.

Appellant was charged in two indictments with aggravated sexual assault, and he pleaded "not guilty" to both indictments. The cases were consolidated for trial. In her testimony at trial, Tina identified incidents of appellant's sexual abuse by indicating which home she lived in with appellant at the time of the incidents. She described in detail how appellant first touched her "private areas" when she was five years old in the Highlands home. According to Tina, he touched her "front private parts" with his hands between ten and twenty times at that home. Tina testified that more than twenty times in the Highlands home, appellant put his "private spot" on her "private spot" as he got on top of her, "shaking up and down" with his "private part" and making "grunting" noises.

When Tina was seven or eight years old, she and appellant moved to Baytown. One time, while living in Baytown, appellant came home from drinking and touched Tina under her clothing in her "front private area" [2] with his hands, which hurt her. In another Baytown incident, appellant came into Tina's room and removed her clothing and his clothing. He "moved his body up and down" behind her, touching his sexual organ to her behind. Describing an incident at another person's Baytown home, Tina testified that appellant touched her "private parts" with his hand and scratched her there with his jagged fingernail. On that occasion, appellant then put his "private part" in Tina's mouth and moved her head up and down; she vomited afterwards.

Facts are disputed as to whether Tina saw appellant during the summer of 2003, the time period in which the State (in the indictment) alleged the offenses occurred. Appellant testified that he had no contact

---

**2.** Tina responded affirmatively when the State asked her if she was specifically talking about her "private part" as being "where the hole is" where she goes to the restroom.

with Tina at that time because he had sent Tina to live with a relative, Josephine Avalos, while appellant worked out of town over the summer. Appellant's long-time friend and co-worker testified that appellant had no contact with Tina during that summer. Tina's two cousins and paternal aunt testified that Tina lived with them that summer, noting that Tina made an outcry statement about sexual abuse by an "Uncle Alex," who lived with Avalos; however, the cousins and aunt indicated that Tina had no contact with appellant. Tina recalled living with the cousins at some point and testified that her paternal aunt took her to and from appellant's home. Tina indicated that she later lived with maternal aunt Joann Hernandez for part of the summer. Tina testified that she could have lived with Avalos at some point in the springtime, but Tina did not recall a person named Alex or alleging he had abused her. Hernandez testified that Tina came to live with her in April 2003, and later that fall she typically dropped Tina off at appellant's home in Baytown before school and picked Tina up after school.

At trial, the State introduced outcry witness Bohannon, Tina's therapist Kleinpeter, and Baytown Police Department investigating officer Detective D.A. Harrison. Livermore testified as to the results of Tina's medical examination. Alice,[3] the fourteen-year-old daughter of appellant's former live-in girlfriend, provided extraneous-offense testimony that appellant twice had touched her chest and rubbed her stomach when she lived with appellant in the Highlands home. Appellant presented testimony from Tina's two cousins and

aunt, and appellant testified in his own defense.

A jury found appellant guilty of both counts of aggravated sexual assault of a child and assessed punishment at sixty years' confinement for each offense, with the sentences to run consecutively.

## II. ISSUES AND ANALYSIS

### A. Is the evidence legally and factually sufficient to support the convictions?

In two issues, appellant challenges the sufficiency of the evidence supporting his convictions.[4] Appellant first contends the trial court erred in denying his motions for instructed verdicts because the State failed to produce evidence of every element of the offenses, specifically the element of digital penetration. Appellant contends that by improperly denying his motions, the burden of proof shifted from the State to appellant to prove his innocence, which is why he testified on his own behalf. Appellant also argues the evidence is factually insufficient because no medical evidence and no other witnesses support the allegations. Appellant complains that Tina's testimony is unreliable because she used unsophisticated terminology for genitalia and sexual acts, and she could not recall where she lived that summer, or anyone named Alex, or making outcry against Alex when appellant presented contrary evidence.

A challenge of the trial court's denial of a motion for instructed verdict is a challenge to the legal sufficiency of the evidence to support the conviction. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App.1996). When evaluating a

3. To protect the privacy of the child witness in this case, we identify her by a pseudonym, "Alice."

4. In two separate issues, appellant challenges the factual sufficiency of the evidence and contends the trial court erred in denying his

motions for instructed verdicts. A challenge to the trial court's denial of a motion for an instructed verdict is, in effect, a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim.App.1996). We review these two separate issues together.

challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim. App.1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

 In contrast, when evaluating a challenge to the factual sufficiency of the evidence, we view all the evidence in a neutral light and inquire whether we are able to say, with some objective basis in the record, that a conviction is "clearly wrong" or "manifestly unjust" because the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 414–17 (Tex.Crim.App.2006). It is not enough that this court harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence, and this court cannot declare that a conflict in the evidence justifies a new trial simply because it disagrees with the jury's

resolution of that conflict. *Id.* at 417. If this court determines the evidence is factually insufficient, it must explain in exactly what way it perceives the conflicting evidence greatly to preponderate against conviction. *Id.* at 414–17. The reviewing court's evaluation should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *See Fuentes*, 991 S.W.2d at 271. In conducting a factual-sufficiency review, we discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim. App.2003).

 A person commits the offense of aggravated sexual assault if the person intentionally or knowingly (1) causes penetration of the female sexual organ of a child younger than fourteen years of age, and (2) causes the sexual organ of a child younger than fourteen years of age to contact the person's sexual organ. *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(iii), (2)(B), 22.011(c)(1), (2) (Vernon Supp.2002). One indictment alleged that, on or about July 15, 2003, appellant knowingly and intentionally caused the penetration of Tina's female sexual organ with his finger. The other indictment alleged that, on or about July 15, 2003, appellant knowingly and intentionally caused Tina's sexual organ to contact appellant's sexual organ. The "on or about" language in the indictments permits the State to prove the offenses occurred on any date that is prior to presentment of the indictment and within the statutory limitations period. *Garcia v. State*, 981 S.W.2d 683, 685–86 (Tex.Crim.App.1998). An indictment with this language gives a defendant notice that he must be prepared to defend against the alleged act of criminal misconduct within the applicable statute of limitations. *See id.* at 686. As evidence contrary to the verdict, appellant cites conflicting testimony about where

Tina lived that summer and Tina's tendency to identify dates of abuse by referencing which home she lived in at the time. Although appellant presented testimony that he did not live with Tina that summer, the State offered contrary evidence through Hernandez and Tina, despite her inability to pinpoint exact dates. We presume the jury, when faced with conflicting evidence, resolved conflicts in favor of the prevailing party. *Turro*, 867 S.W.2d at 47. The jury, as a rational trier of fact, could have determined beyond a reasonable doubt that the State proved the offenses had occurred on a date prior to presentment of the indictment and within the statutory limitations period. Therefore, we find no merit in appellant's legal-sufficiency challenge. *See McDuff,* 939 S.W.2d at 614.

 Additionally, Tina's testimony alone is sufficient to support the convictions for aggravated sexual assault. *See* TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Villalon v. State,* 791 S.W.2d 130, 134 (Tex.Crim.App.1990) (concluding child victim's unsophisticated terminology alone established element of penetration beyond a reasonable doubt); *Satterwhite v. State,* 499 S.W.2d 314, 315 (Tex.Crim. App.1973) (holding unsophisticated testimony that appellant placed "his male organ into her private parts" was sufficient to sustain conviction); *Jensen v. State,* 66 S.W.3d 528, 534 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). The record reflects that Tina gave detailed descriptions of several incidents in Baytown involving appellant's hands and sexual organ, penetration, and sexual contact. Tina indicated on anatomically correct dolls the "private parts," "behind," and "chest" to support her state-

ments regarding appellant's actions. She identified the dates of abuse by naming which home she lived in with appellant at the time of the incidents. Despite her unsophisticated terminology and rough time-frame of the events, Tina's detailed account of the sexual abuse, even if unsupported by any other evidence, would be sufficient to support appellant's convictions for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Villalon,* 791 S.W.2d at 134; *Satterwhite,* 499 S.W.2d at 315; *Jensen,* 66 S.W.3d at 534. Furthermore, Tina's outcry testimony retains probative value even if other evidence contradicts the outcry statement, especially in light of additional evidence from other witnesses, such as Bohannon and Kleinpeter, that tends to corroborate Tina's testimony. *See Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991) (holding that outcry evidence, even if contradicted at trial, retains probative value sufficient enough to prove an essential element of indecency with a child). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence," and the jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Fuentes,* 991 S.W.2d at 271; *Sharp,* 707 S.W.2d at 614. Moreover, physical evidence is not required when, as in this case, the complainant provides ample testimony to establish that a sexual assault occurred. *Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim.App.1978); *Tinker v. State,* 148 S.W.3d 666, 669 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

 The jury heard Tina's testimony and weighed Tina's imperfect perception of time[5] as to when the abuse occurred,

5. The jury also heard Bohannon's testimony explaining that children of Tina's age often do not have an accurate perception of time and that Tina's imperfect perception of time could be attributed to her delayed emotional development. The jury was able to accept or discount Bohannon's testimony reasoning why Tina could not accurately pinpoint dates of the assaults. *See Fuentes,* 991 S.W.2d at 271; *Sharp,* 707 S.W.2d at 614.

Tina's use of unsophisticated terminology,[6] and her alleged inability to recall making an outcry of abuse by "Alex." Because Tina provided detailed testimony sufficient to establish that appellant committed aggravated sexual assaults against her, medical evidence is not required. *See Tinker,* 148 S.W.3d at 669. To the extent that Tina's testimony contradicts that of appellant's, the jury, as trier of fact, held the ultimate authority to weigh the credibility of the witnesses and the testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Burks v. State,* 876 S.W.2d 877, 909 (Tex.Crim.App.1994). The jury judged the credibility of the witnesses and reconciled conflicts in the testimony, and could have accepted or rejected any or all of the evidence on either side. *See Fuentes,* 991 S.W.2d at 271; *Sharp,* 707 S.W.2d at 614. In a legal-sufficiency review, any inconsistencies in the testimony should be resolved in favor of the jury's verdict. *Johnson v. State,* 815 S.W.2d 707, 712 (Tex.Crim.App. 1991). When viewed in the light most favorable to the verdict, the jury, as a rational trier of fact, could have determined that the essential elements of the offenses were met beyond reasonable doubt. *See McDuff,* 939 S.W.2d at 614. Thus, the trial court was correct to deny appellant's request for an instructed verdict. *See Rangel v. State,* 199 S.W.3d 523, 538 (Tex.App.-Fort Worth 2006, no pet.). When viewed in a neutral light, we cannot say, with some objective basis in the record, that appellant's convictions are "clearly wrong" or "manifestly unjust" because the great weight and preponderance of the evidence contradicts the jury's verdict. *See Watson,* 204 S.W.3d at 414–17.

The evidence presented is legally and factually sufficient to support appellant's convictions for aggravated sexual assault.[7] *See Watson,* 204 S.W.3d at 414–17; *McDuff,* 939 S.W.2d at 614; *Villalon,* 791 S.W.2d at 134. Accordingly, we overrule appellant's third and seventh issues.

## B. Did the trial court abuse its discretion in admitting extraneous-offense evidence?

▆▆▆▆ In his fifth issue, appellant complains that the trial court erred in admitting extraneous-offense evidence that appellant sexually assaulted Alice, his former live-in girlfriend's fourteen-year-old daughter. Appellant argues that this ruling was in violation of Texas Rules of Evidence 404(b) and 403. *See* TEX.R. EVID. 403 (stating trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice); TEX.R. EVID. 404(b) (stating evidence of other crimes, wrongs, or acts may be admissible for some purposes). A trial court's ruling on the admissibility of evidence is reviewed under an abuse-of-discretion standard. *Moses v. State,* 105 S.W.3d 622, 627 (Tex.Crim.App. 2003). If the trial court's ruling was within the zone of reasonable disagreement, there is no abuse of discretion. *Id.*

### 1. Texas Rule of Evidence 404(b)

**6.** The jury also heard Bohannon's testimony explaining it is not unusual for ten-year-old children to not use proper terminology for male and female genitalia. Because children use unsophisticated language when describing sexual acts, the jury may account for this factor when assessing the weight of children's testimony. *See Wallace v. State,* 52 S.W.3d 231, 235 (Tex.App.-El Paso 2001, no pet.) (concluding that where children's lack of sophistication in accurately describing parts of the body renders evidence legally sufficient to establish guilt, the same rule should apply in a factual sufficiency review).

**7.** Because we find the trial court properly denied appellant's motions for instructed verdicts, we need not reach the merits of appellant's contention that in denying the instructed verdicts, the trial court improperly shifted the burden of proof from the State to appellant.

Extraneous-offense evidence of other crimes, wrongs, or acts may not be admitted in order to show that the defendant acted in conformity with bad character. TEX.R. EVID. 404(b). Extraneous-offense evidence, if relevant apart from proving character conformity, may be admitted for other purposes including proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. TEX.R. EVID. 404(b); *Moses*, 105 S.W.3d at 626. Though evidence of other crimes, wrongs, or acts may have a tendency to show character conformity, extraneous-offense evidence that has relevance apart from character conformity, such as for rebuttal of a defensive theory, may be admissible. *See* TEX.R. EVID. 404(b); *Moses*, 105 S.W.3d at 626 n. 4, 628; *Powell v. State*, 63 S.W.3d 435, 438–39 (Tex.Crim.App.2001); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim.App.1990) (op. on reh'g).

The Texas Court of Criminal Appeals has held that extraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination, as in this case. *See Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.1994) (op. on reh'g) (concluding trial court did not err in admitting evidence to rebut defensive theory raised on cross-examination of State's witnesses); *Powell*, 63 S.W.3d at 439 (concluding trial court did not err in admitting evidence to rebut defensive theories raised in opening statement). However, the fact that the State's witnesses were cross-examined does not, in and of

itself, authorize the introduction of extraneous-offense evidence. *Caldwell v. State*, 477 S.W.2d 877, 879 (Tex.Crim.App.1972); *Webb v. State*, 36 S.W.3d 164, 181 n. 9 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (en banc); *Bass v. State*, 222 S.W.3d 571, 576, 578 (Tex.App.-Houston [14th Dist.] 2007, pet. granted); *Patterson v. State*, No. 05–06–00808–CR, 2007 WL 4200998, at *13 (Tex.App.-Dallas Nov.29, 2007, no pet. h.) (not designated for publication). A challenge to the complainant's credibility on cross-examination does not automatically open the door to extraneous-offense evidence.[8] *See Caldwell*, 477 S.W.2d at 879; *DeLeon v. State*, 77 S.W.3d 300, 314 (Tex.App.-Austin 2001, pet. ref'd). Rather, the responses elicited from the State's witnesses on cross-examination, must be sufficient to construct a defensive theory before the State may introduce extraneous-offense evidence in rebuttal. *Walker v. State*, 588 S.W.2d 920, 922–23 (Tex.Crim.App.1979); *DeLeon*, 77 S.W.3d at 314. To raise a defensive theory sufficient to open the door to the introduction of the extraneous-offense evidence, the cross-examination responses must undermine the State's testimony and effectively place in controversy a fact that testimony was offered to prove. *See Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App.1988), *overruled on other grounds, Alford v. State*, 866 S.W.2d 619, 624 n. 8 (Tex.Crim. App.1993); *Clark v. State*, 726 S.W.2d 120, 122 (Tex.Crim.App.1986); *Albrecht v. State*, 486 S.W.2d 97, 102 (Tex.Crim.App. 1972); *see also Rankin v. State*, 974 S.W.2d 707, 709 (Tex.Crim.App.1996) (requiring extraneous offense to be relevant

---

**8.** *Accord Caldwell*, 477 S.W.2d at 879 ("To hold that the cross-examination of this prosecutrix would permit the introduction of an extraneous offense would be tantamount to holding that such testimony would be admissible in any case where a defendant's counsel exercises the constitutional right of cross-examination. That is not and should not be the

law."); *Bass*, 222 S.W.3d at 578 (holding that because the State did not identify any legitimate reason for allowing extraneous-offense evidence beyond mere fabrication, such extraneous-offense evidence held no relevance apart from proving appellant's character or actions in conformity therewith).

to a "fact of consequence"); *Webb,* 36 S.W.3d at 180. In *Bass v. State,* this court held that a fabrication defensive theory, without other legitimate, permissible 404(b) purposes, is not sufficient to permit the introduction of extraneous-offense evidence in rebuttal. 222 S.W.3d at 578 (Tex. App.-Houston [14th Dist.] 2007, pet. granted); *accord Dennis v. State,* 178 S.W.3d 172, 178 n. 1 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (indicating that, to construct a defensive theory in cross-examination that implicates a defensive theory beyond mere fabrication, an accused should offer not just a motive, but evidence of a reason to lie).

 In sexual-assault cases, extraneous-offense evidence may be admitted under Rule 404(b) to rebut defensive theories of retaliation or that the defendant is an innocent victim of a "frame-up." *See Wheeler v. State,* 67 S.W.3d 879, 887 n. 22 (Tex.Crim.App.2002) (admitting extraneous-offense evidence to rebut defensive theory of a frame-up when extraneous misconduct is similar to the charged offense and when the witness lacked motive to lie); *Moses,* 105 S.W.3d at 626, 627 (permitting evidence of extraneous offenses to rebut a retaliation defense). This court in *Bass v. State* examined the differences among fabrication, a frame-up theory, and a retaliation theory. 222 S.W.3d at 576–77. The *Bass* court stated that, in a fabrication theory, the defendant contends only that the complainant is making up the allega-

tions. *See id.* The *Bass* court stated that, though both frame-up and retaliation involve an element of fabrication, a frame-up theory suggests conspiracy against a defendant that is motivated by money or revenge, while retaliation involves a defendant's assertion that "a party did something in retaliation for an action." [9] *Id.; see Wheeler,* 67 S.W.3d at 887 (involving defensive theory of "conspiracy or frame-up motivated by greed" or money); *Moses,* 105 S.W.3d at 627 (involving a retaliation defensive theory); *see also Dennis,* 178 S.W.3d at 178 (involving a frame-up defensive theory motivated by anger or revenge); *Blackwell v. State,* 193 S.W.3d 1, 12 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (involving a frame-up defensive theory motivated by "bad blood" among family members); *Townsend v. State,* 776 S.W.2d 316, 318 (Tex.App.-Houston [1st Dist.] 1989, writ ref'd) (involving a defensive theory motivated by complainant's anger).

 By his cross-examination of both Tina and Kleinpeter, appellant sought to establish a defensive theory that Tina's allegations were fabricated and based on the premise that she no longer wanted to live with appellant's physical abuse and temper.[10] *See Townsend,* 776 S.W.2d at 318 (involving extraneous-offense evidence to rebut a defensive theory that the complainants fabricated sexual-abuse allegations out of anger because appellant did not take them on a trip); *see also Dennis,*

---

9. The facts of *Bass* are different from those in the case at hand because the only defensive theory raised at trial in *Bass* was fabrication, for which the *Bass* court determined extraneous-offense evidence cannot be admitted. *See Bass,* 222 S.W.3d at 578; *see also Webb,* 36 S.W.3d at 180.

10. In response to appellant's questions on cross-examination, Tina admitted appellant hit her, had a temper, and mistreated her to the point that she did not want to live with appellant anymore. In appellant's cross-ex-

amination of Tina regarding her alleged accusations of sexual abuse by "Alex," appellant's trial counsel justified this line of questioning on that subject by stating, "My point is, in [Tina's] mind, she knows that if she makes a sexual abuse claim, she won't have to go back to that house." Appellant elicited similar information from Kleinpeter on cross-examination by asking several different times whether Kleinpeter understood that given appellant's unpleasant living conditions, Tina "might even lie" or "say almost anything" to avoid returning to his home.

178 S.W.3d at 178 (involving a frame-up defensive theory that the allegations were fabricated because the complainant was angry for being disciplined). Through his cross-examination of Tina, appellant connected Tina's allegations to specific acts of punishment imposed by appellant in the form of physical abuse or household chores. See Patterson, 2007 WL 4200998, at *13; DeLeon, 77 S.W.3d at 314. Appellant offered both a motive for Tina to fabricate the allegations and evidence, through Tina's and Kleinpeter's testimony, of Tina's reason to lie, i.e. Tina was upset about living with appellant's temper and physical abuse. See Dennis, 178 S.W.3d at 178 n. 1; Townsend, 776 S.W.2d at 318. Appellant did more than merely impeach Tina's credibility; through the responses elicited from Tina and Kleinpeter during cross-examination, appellant opened the door to extraneous-offense evidence to rebut appellant's defensive theory of retaliation. See Dennis, 178 S.W.3d at 178 n. 1; see also Walker, 588 S.W.2d at 922; DeLeon, 77 S.W.3d at 314; Townsend, 776 S.W.2d at 318.

The State requested, outside of the jury's presence, that Alice's testimony be admitted for the Rule 404(b) purpose of rebutting appellant's defensive theory raised in appellant's cross-examination of Tina—that she fabricated the allegations to retaliate against appellant's physical abuse and to avoid living with him. The trial court allowed Alice's extraneous-offense testimony in light of this cross-examination, specifically finding that the probative value of the evidence outweighed the prejudicial effect. The State then elicited testimony from Alice that on two prior occasions, while Alice was a pre-teen and living in the same home as appellant, appellant twice touched her chest and rubbed her stomach in bed, which made her feel "weird."

The Court of Criminal Appeals has held that a trial court does not abuse its discretion in admitting extraneous-offense evidence to rebut retaliation when raised as a defensive theory. Moses, 105 S.W.3d at 627; see Bass, 222 S.W.3d at 577. The record reflects Tina's responses to appellant's cross-examination plausibly fit within a defensive theory of retaliation in that Tina could have fabricated the allegations to retaliate against appellant for his physical abuse and to avoid returning to appellant's care. See Moses, 105 S.W.3d at 627; Townsend, 776 S.W.2d at 318. Appellant's cross-examination of Kleinpeter elicited essentially the same information that Tina did not want to live with appellant because of his physical abuse. The State raised the defensive theory of retaliation as a permissible 404(b) purpose for which to present Alice's relevant extraneous-offense evidence, and the trial court granted the State's request "in light of defense's cross [examination]." See Moses, 105 S.W.3d at 627; Ransom, 920 S.W.2d at 301. Under Moses, the trial court did not abuse its discretion in determining Alice's extraneous-offense testimony was relevant rebuttal evidence to show that Tina was not motivated by retaliation in making the sexual-abuse allegations against appellant. See Moses, 105 S.W.3d at 627.

## 2. Texas Rule of Evidence 403

 Even if relevant evidence is offered and admissible under Rule 404(b), a trial court nonetheless should exclude it from evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Tex.R. Evid. 403; Moses, 105 S.W.3d at 626; Montgomery, 810 S.W.2d at 387. Courts should balance the following factors under a Rule 403 analysis: (1) the strength of the evidence in making a fact more or less probable, (2) the potential of the extraneous-offense evidence to impress the jury in

some irrational but indelible way, (3) the amount of time the proponent needed to develop the evidence, and (4) the strength of the proponent's need for this evidence to prove a fact of consequence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex.Crim.App. 1999). When, as in this case, the record is silent as to the trial court's balancing of these factors, we presume the trial court conducted the balancing test. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex.Crim.App.1997).

■ The first of the factors, the strength of the evidence to make a fact of consequence more or less probable, weighs strongly in favor of admissibility. The extraneous-offense evidence was probative to rebut appellant's theory that Tina's allegations were fabricated in retaliation for appellant's abuse. *See Wheeler*, 67 S.W.3d at 888. Alice's testimony contains similarities to Tina's testimony in that both involve appellant sexually touching a preteen girl living in the same residence as appellant at the time of the touching. *See Dennis*, 178 S.W.3d at 181. Alice's testimony, that appellant touched another girl in a similar manner, undermines appellant's theory that Tina fabricated the allegations against him as retaliation. *See id.* Because Alice's extraneous-offense testimony rebuts appellant's defensive theory of retaliation, the admission of this evidence makes it less likely Tina's allegations are the result of retaliation. This evidence also makes the fact of consequence, that Tina fabricated the allegations out of retaliation, less probable in that appellant had similarly touched other pre-teen girls who lived in his home who ostensibly had no reason to fabricate allegations of sexual abuse as a means of retaliation. *See Wheeler*, 67 S.W.3d at 888; *Dennis*, 178 S.W.3d at 181.

As to the second and third factors, though danger lurks in impressing the jury in an indelible way and Alice's testimony is prejudicial and carries some emotional weight, any unfair prejudice is not outweighed by the probative value. *See Dennis*, 178 S.W.3d at 181. The State spent minimal time developing Alice's testimony, and it was neither lengthy nor graphic; it is not likely that the jury was impressed in some irrational or indelible way. *See id.* Therefore, the second and third factors weigh in favor of admissibility.

The fourth factor, requiring balancing of the State's need for such extraneous-offense evidence, is significant. Tina did not tell anyone about her allegations until almost a year and a half after she claimed the abuse occurred, there was no physical evidence, and no other witnesses could support her testimony. Because appellant strongly contested Tina's allegations on a theory of retaliation, the State demonstrated the need to counter appellant's theory that Tina fabricated the allegations in order to avoid living with appellant. *See id.* As such, this factor weighs heavily in favor of admissibility.

■ A trial court's 403 ruling on admitting extraneous-offense evidence must be upheld so long as it is "within the zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391. The trial court admitted Alice's extraneous-offense testimony on the basis that her testimony holds probative value that outweighs any prejudicial effect. *See* Tex.R. Evid. 403. In balancing the above factors in the instant case, the trial court's ruling that any unfair prejudice from Alice's extraneous-offense testimony does not outweigh its probative value is within the zone of reasonable disagreement. *See Williams*, 958 S.W.2d at 195–96; *Moses*, 105 S.W.3d at 626. We conclude the trial court did not abuse its discretion under Rule 403 in admitting the extraneous-offense evidence. *See Moses*,

105 S.W.3d at 627. We overrule appellant's fifth issue.

## C. Did the trial court abuse its discretion in admitting or limiting witness testimony?

In three issues, appellant contends the trial court abused its discretion in permitting certain testimony from three witnesses: (1) outcry witness Bohannon, (2) therapist Kleinpeter, and (3) Detective Harrison. In a fourth issue, appellant complains the trial court abused its discretion in limiting appellant's direct examination of witnesses concerning Tina's prior inconsistent outcry statements. We review a trial court's decision to admit or exclude evidence for an-abuse of discretion. *Mozon*, 991 S.W.2d at 846–47; *Moses*, 105 S.W.3d at 627. As previously noted, if the trial court's ruling was within the zone of reasonable disagreement, we must affirm. *Montgomery*, 810 S.W.2d at 391.

### 1. Did the trial court abuse its discretion in designating the proper outcry witness under article 38.072 of the Texas Code of Criminal Procedure?

■ In his first issue, appellant claims reversible error and harm in the trial court's admission of Tina's outcry testimony through Bohannon because, appellant asserts, Bohannon was an improper outcry witness. Appellant complains Wilson is the proper outcry witness, because Wilson was the first to hear Tina report the abuse when Wilson tricked Tina into revealing that appellant had sexually assaulted her. By not offering Wilson as the proper outcry witness, appellant claims, the trial court denied his right to confrontation under the Sixth Amendment of the United States Constitution. A trial court's designation of an outcry witness will be upheld when supported by the evidence. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex.Crim.App. 1990).

■ Under article 38.072 of the Texas Code of Criminal Procedure, some hearsay statements are admissible in prosecuting certain offenses, including aggravated sexual assault of a child, as in this case. TEX.CODE CRIM. PROC. ANN. art. 38.072, § 1 (Vernon Supp.2005). This statute applies to "statements that describe the alleged offense" and that "(1) were made by the child against whom the offense was allegedly committed and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense." *Id.* § 2(a)(1), (2). The Court of Criminal Appeals has construed the statute to apply to the first adult to whom the complainant makes a statement that "in some discernible manner describes the alleged offense." *Garcia*, 792 S.W.2d at 91. To invoke the statute, the statements must be more than words that "give a general allusion" that something in the area of child abuse has occurred. *Id.*

■ Although appellant contends Wilson is the proper outcry witness, the record reflects that Tina did not describe the alleged offense to Wilson. *See id.* Rather, Wilson learned of the specific details of Tina's sexual abuse from Tina's therapist, Kleinpeter. Tina's statements to Wilson were no more than a general allusion that abuse had occurred. *See id.* Such general allusions, in which the complainant does not describe the abuse in a discernible manner, are not within the purview of article 38.072. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072; *Garcia*, 792 S.W.2d at 91.

■ Bohannon testified as to Tina's detailed description of appellant's contact with and penetration of Tina's "private areas." In the videotaped interview, Tina describes the abuse in detail to Bohannon by pointing to anatomical diagrams of a male and female body and describing how, when, and where the incidents occurred.

According to the record, Bohannon was the first person over eighteen years of age to whom Tina in some discernible manner described the alleged offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Garcia,* 792 S.W.2d at 91. Bohannon testified Wilson could not provide information about any abuse beyond a general allegation. Tina's account of the abuse as relayed to Bohannon was more than a general allusion that child abuse had occurred; her statements contained sufficient information about the nature of the acts and the perpetrator to meet the requirements of article 38.072 regarding the proper outcry witness. *See* Tex.Code Crim. Proc. Ann. art. 38.072; *Garcia,* 792 S.W.2d at 91; *Reed v. State,* 974 S.W.2d 838, 841 (Tex.App.-San Antonio 1998, pet. ref'd); *Hayden v. State,* 928 S.W.2d 229, 231 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd); *Schuster v. State,* 852 S.W.2d 766, 768 (Tex.App.-Fort Worth 1993, pet. ref'd) (holding psychologist was proper outcry witness even though complainant told mother first, but child was so upset that no details were provided). We conclude the trial court did not abuse its discretion in determining that Bohannon was the proper outcry witness. *See* Tex.Code Crim. Proc. Ann. art. 38.072; *Garcia,* 792 S.W.2d at 92.

■ Appellant complains the State misled him into believing Wilson was an outcry witness based on the State's notice. We need not reach the merits of this argument because appellant failed to preserve error by objecting at the outcry hearing. *See* Tex.Code Crim. Pro. Ann. § 38.072; *Garcia v. State,* 907 S.W.2d 635, 637 (Tex. App.-Corpus Christi 1995), *aff'd,* 981 S.W.2d 683 (Tex.Crim.App.1998). Even if appellant had preserved error by voicing the complaint he now raises on appeal, he would have suffered no prejudice. *See Brown v. State,* 756 S.W.2d 793, 797 (Tex. App.-Houston [14th Dist.] 1988, pet. ref'd). The purpose of requiring notice is to prevent the accused from being surprised by the introduction of outcry testimony. *See id.* In this case, the record reflects the State identified both Wilson and Bohannon as potential outcry witnesses and the record is devoid of any evidence of surprise. *See id.*

■ Appellant's claim that he was unconstitutionally denied his Sixth Amendment right to confront and cross-examine his accusers because the State proffered Bohannon's outcry testimony, rather than Wilson's, is waived because he failed to preserve the complaint for review. *See* Tex.R.App. P. 33.1(a)(1)(A) (requiring a trial court objection to comport with objection on appeal); *Reyna v. State,* 168 S.W.3d 173, 179 (Tex.Crim.App.2005); *Gregory v. State,* 56 S.W.3d 164, 177 (Tex. App.-Houston [14th Dist.] 2001, pet. dism'd). Though appellant objected to Bohannon as an outcry witness, he failed to voice any objection under the Confrontation Clause, and, therefore, waived this argument. *See id.*

■ Finally, appellant contends Tina's school officials are the proper outcry witnesses, alleging that the State "made no effort to ascertain whether any of the nuns or school employees were the proper 'outcry' witnesses." The record is silent as to whether school personnel were interviewed, and the State did not identify school personnel as outcry witnesses in the State's notice. Tina testified that she first confided in a classmate, who presumably is under the age of eighteen, and, therefore, not a qualified outcry witness under article 38.072. *See* Tex.Code Crim. Proc. Ann. art. 38.072. Additionally, the record reflects school officials did not divulge the nature of their concerns to Wilson, which suggests that they were not aware of more than a general allusion that child abuse had occurred. *See Garcia,* 792 S.W.2d at 91. If the school personnel had only a general notion as to the nature of the abuse, they

are not proper outcry witnesses under article 38.072. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072; *Garcia,* 792 S.W.2d at 90–91. We overrule appellant's first issue.

**2. Did the trial court abuse its discretion by permitting the complainant's therapist to testify concerning the complainant's hearsay statements made in therapy?**

In his second issue, appellant complains that the trial court erred in permitting Tina's therapist, Kleinpeter, to testify as to hearsay statements Tina made during therapy under Texas Rule of Evidence 803(4). *See* TEX.R. EVID. 803(4) (allowing admission of hearsay statements made for the purpose of obtaining a diagnosis and treatment). Specifically, appellant contends Kleinpeter is not qualified as a medical physician providing treatment to Tina because depression, anxiety, sadness, and tearfulness, for which Kleinpeter treated Tina, are common symptoms of a child whose life is unstable, and, therefore, Tina's statements in therapy with Kleinpeter were not reasonably pertinent to a diagnosis or treatment. Under the abuse-of-discretion standard, a reviewing court will not reverse an 803(4) evidentiary ruling as long as it falls within the zone of reasonable disagreement. *Gregory,* 56 S.W.3d at 183.

■■■■■ Under Rule 803(4), a trial court may allow admission of hearsay statements describing sexual abuse that were made for the purpose of facilitating medical diagnosis or treatment. TEX.R. EVID. 803(4); *Gregory,* 56 S.W.3d at 183. "[I]f the statement is made to another for the purpose of medical treatment, the person to whom the statement is made does not necessarily have to be a 'medical person.'" *Gohring v. State,* 967 S.W.2d 459, 461 (Tex.App.-Beaumont 1998, no pet.); *see Macias v. State,* 776 S.W.2d 255, 259 (Tex.App.-San Antonio 1989, pet. ref'd). Non-physicians, such as licensed therapists

like Kleinpeter, may testify under the medical diagnosis and treatment exception. *See* TEX.R. EVID. 803(4); *Gregory,* 56 S.W.3d at 183.

■■■■■ All statements made in the context of counseling may well be relevant to a diagnosis or treatment; however, to be admitted under Rule 803(4), the statements also must be pertinent to the diagnosis or treatment. *Moore v. State,* 82 S.W.3d 399, 413 (Tex.App.-Austin 2002, pet. ref'd) (permitting hearsay statements if "reasonably pertinent to diagnosis or treatment"); *Gregory,* 56 S.W.3d at 183. Therefore, to satisfy Rule 803(4), any hearsay statements must be made for the purpose of and be reasonably pertinent to medical diagnosis or treatment. *Moore,* 82 S.W.3d at 413. Statements regarding abuse made to a psychologist or therapist are made for the purpose of medical diagnosis and treatment. *Macias,* 776 S.W.2d at 259. Because treatment of child abuse includes removing a child from an abusive setting, the identity of the abuser is pertinent to the medical treatment of the child. *Moore,* 82 S.W.3d at 413. Hearsay statements by a suspected child victim of abuse regarding causation, source of abuse, or describing abusive acts are admissible under Rule 803(4) as being pertinent to the medical treatment of a victim. *Gregory,* 56 S.W.3d at 183; *Moore,* 82 S.W.3d at 413.

The trial court first noted that Kleinpeter is part of the medical profession as a licensed marriage and family therapist. *Gregory,* 56 S.W.3d at 183; *Macias,* 776 S.W.2d at 259. The trial court permitted Kleinpeter's testimony regarding Tina's statements of abuse, but specifically limited Kleinpeter's testimony to recounting only those statements Tina made in the initial discussion of abuse because such statements were necessary for properly diagnosing Tina and developing a course of

therapy. Kleinpeter testified to her diagnosis and treatment of Tina's post-traumatic stress disorder. According to Kleinpeter, in Tina's initial discussion of sexual abuse, Tina described the sexual abuse as appellant putting "his thing in her front and back and in her mouth." Kleinpeter testified that Tina, over the course of twenty-four sessions in fifteen months, talked about appellant's sexual abuse every three to four sessions. Kleinpeter's testimony did not include other hearsay statements. Only on cross-examination, in response to appellant's question about the specific details of sexual abuse, did Kleinpeter recount Tina's description of one occasion of abuse with specific detail.

Kleinpeter testified to Tina's statements of abuse at appellant's hands in connection with Kleinpeter's treatment of Tina's post-traumatic stress disorder. *See Gohring,* 967 S.W.2d at 461; *Macias,* 776 S.W.2d at 259. Non-physicians, such as licensed therapists like Kleinpeter, may testify to causation and source of abuse under the medical-diagnosis-and-treatment hearsay exception. *See* TEX.R. EVID. 803(4); *Gregory,* 56 S.W.3d at 183. Tina's statements regarding the sexual acts and appellant's identity were for the purpose of and pertinent to Kleinpeter's treatment and diagnosis of Tina. *See Macias,* 776 S.W.2d at 259; *Gregory,* 56 S.W.3d at 183. Thus, we conclude the trial court did not abuse its discretion in permitting Kleinpeter's testimony regarding Tina's hearsay statements made in the initial discussion of abuse. *See Gohring,* 967 S.W.2d at 461.

 Even if the trial court had erred in admitting this testimony, the error would be harmless because the same information was properly admitted without appellant's objection through other witnesses. *See Brooks v. State,* 990 S.W.2d 278, 287 (Tex.Crim.App.1999). Given Bohannon's substantially similar testimony and Tina's own detailed testimony, both admitted without appellant's objection, any error in admitting Kleinpeter's testimony of Tina's hearsay statements of abuse would be harmless. *See id.; Jones v. State,* 111 S.W.3d 600, 604–05 (Tex.App.-Dallas 2003, pet. ref'd). Accordingly, we overrule appellant's second issue.

**3. Did the trial court abuse its discretion by permitting a law enforcement officer to testify as to the frequency of normal results in medical examinations for child-abuse cases?**

In his fourth issue, appellant complains the trial court abused its discretion in permitting Detective Harrison to testify that medical exams in child-abuse cases frequently yield normal results because the law enforcement officer was not a qualified expert to discuss such medical results in violation of Texas Rules of Evidence 701 and 702. Appellant specifically complains of the following exchange at trial:

> [THE PROSECUTOR]: And based on your experience, how many -specifically in child abuse, how many times after medical exams are done do you find normal findings, based on your experience?
>
> · · ·
>
> [HARRISON]: It is common for me to find normal findings in my investigations for medical results for child abuse.

 A trial court's ruling on admissibility or exclusion of evidence will be upheld if the record reasonably supports the ruling. *Fairow v. State,* 943 S.W.2d 895, 901 (Tex.Crim.App.1997). Under Rule 702, if a witness possesses scientific, technical, or other specialized knowledge that will assist a fact finder, and if the witness is qualified as an expert by knowledge, skill, experience, training, or education, then that expert may testify with an opinion. TEX.R. EVID. 702; *Jensen,* 66 S.W.3d at 542. Under Rule 701, once personal knowledge is established, a person, as a

lay witness, may offer an opinion based on her perception to help a fact finder understand testimony or determine a fact in issue. *See* Tex.R. Evid. 701; *Solomon v. State*, 49 S.W.3d 356, 364 (Tex.Crim.App. 2001). An officer's personal knowledge may come from past experiences. *See, e.g., Thomas v. State*, 916 S.W.2d 578, 580–81 (Tex.App.-San Antonio 1996, no pet.).

■ Presuming without deciding that Detective Harrison was not a proper witness to discuss the frequency of certain medical results in child-abuse cases, the error was harmless because the same facts were established by other admissible evidence introduced without objection. *See Willis v. State*, 785 S.W.2d 378, 383 (Tex. Crim.App.1989). The record reflects that Livermore introduced the results from Tina's medical examination and explained that the absence of physical evidence of sexual abuse is not unusual. Therefore, even if the trial court erred in admitting Detective Harrison's testimony, the error was rendered harmless with the introduction of Livermore's testimony. *See id.* Because error, if any, provides no basis for reversal, we overrule appellant's fourth issue.

**4. Did the trial court abuse its discretion in limiting appellant's direct examination regarding the complainant's prior inconsistent statements?**

■ In his sixth issue, appellant contends the trial court erred in limiting the direct examination of witnesses regarding Tina's prior inconsistent statements in violation of Rules of Evidence 405(b) and 402. *See* Tex.R. Evid. 405(b) (stating methods of proving character with specific instances of conduct in cases which a person's character or trait is an essential element of the claim, charge, or defense); Tex.R. Evid. 402 (stating that relevant evidence is generally admissible). Through three defense witnesses, appellant sought to inquire about a prior inconsistent statement Tina

made in the videotaped interview with Bohannon. The statement appellant alleged was inconsistent was Tina's comment that appellant was the only person who had ever touched her sexually. We review a trial court's ruling on the admissibility of a prior inconsistent statement under an abuse-of-discretion standard. *Lopez v. State*, 86 S.W.3d 228, 230 (Tex.Crim.App. 2002).

In a hearing conducted outside of the jury's presence, three defense witnesses, Tina's two cousins, Samantha and Amanda, and Tina's paternal aunt Joann Cantu (collectively "the Cantus") testified that Tina told them details of alleged sexual abuse by Alex. The trial court admitted the testimony in light of Tina's prior statement in the video with Bohannon that appellant was the only person who had touched her in a sexual manner. However, the trial court limited appellant's direct examination of the Cantus to Tina's statements that "Uncle Alex" "stuck his thing in me" and did not permit further questioning concerning details of how the alleged sexual abuse by Alex occurred.

■ To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. Tex.R.App. P. 33.1(a); *Saldano v. State*, 70 S.W.3d 873, 886–87 (Tex.Crim.App.2002). Appellant has not cited and the record does not reveal that appellant raised this Rule 405(b) issue in the trial court. Because appellant did not object at trial on the basis of Rule 405(b), he has waived his complaint about the admissibility of the excluded evidence under Rule 405(b). *Johnson v. State*, 803 S.W.2d 272, 292 (Tex.Crim.App.1990), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 685 n. 6 (Tex.Crim.App.1991).

██ Under Rule 402, appellant complains that the Cantus' testimony was relevant, admissible testimony to rebut Tina's prior statement on the video and to support the following exchange during appellant's cross-examination of Tina:

[APPELLANT'S COUNSEL]: And are you saying that George is the only person who ever did anything to you?

[TINA]: I think.

[APPELLANT'S COUNSEL]: You think. But you're not sure?

[TINA]: Yes.

[APPELLANT'S COUNSEL]: Is it possible that you've said that Alex has done bad things to you?

[TINA]: I can't remember that person.

[APPELLANT'S COUNSEL]: Well, who is it that you think may have also done sexual things to you?

[TINA]: I don't know.

Moreover, appellant argues that the probative value of the Cantus' testimony was not outweighed by any danger of prejudice as the Cantus' testimony would impeach Tina's credibility regarding who abused her and offer an alternative explanation for Tina's allegations.

Because appellant was offering the evidence rather than attempting to exclude it, the only issue affecting admissibility is whether the Cantus' testimony regarding the alleged abuse by Alex was relevant. *See* Tex.R. Evid. 401, 402; *Cameron v. State*, 241 S.W.3d 15, 20 (Tex.Crim.App. 2007). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401; *Jensen*, 66 S.W.3d at 539. To be relevant, evidence must be both material and probative. *Miller v. State*, 36 S.W.3d 503, 507 (Tex.Crim.App. 2001). Evidence is material if it proves any fact of consequence to the determination of the action. Tex.R. Evid. 401; *Mil-*

*ler*, 36 S.W.3d at 507. Appellant also must establish that the proffered testimony is probative as tending to make the existence of a material fact more or less probable than it would be without the evidence. *See* Tex.R. Evid. 401; *Miller*, 36 S.W.3d at 507. The trial court did not abuse its discretion by determining that details of alleged abuse by Alex were not relevant to the determination of whether appellant sexually assaulted Tina, and that such details did not tend to make the existence of a material fact, *vis vis* this case concerning whether appellant sexually abused Tina, more or less probable. *See* Tex.R. Evid. 401, 402; *Miller*, 36 S.W.3d at 507. The trial court did not abuse its discretion when it allowed the Cantus' testimony and ruled that the details of any alleged previous abuse by Alex were not relevant. *See Lopez*, 86 S.W.3d at 231. Therefore, we overrule appellant's sixth issue.

**D. Did the trial court err in denying appellant's requested changes to the jury charge in both the guilt-innocence phase and the punishment phase of trial?**

██ Appellant presents two issues regarding changes to the jury charge in both phases of trial. In analyzing a jury-charge issue, we first determine if error occurred and, if so, we conduct a harm analysis. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App.2005). The degree of harm required for reversal depends on whether appellant has preserved error by objection. *Id.* A jury-charge error requires reversal when, after proper objection, the appellant suffers "some harm" to his rights. *Id.; Almanza v. State*, 686 S.W.2d 157, 174 (Tex.Crim.App.1985) (op. on reh'g), *overruled on other grounds*, *Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex.Crim.App.1988). If appellant failed to object at trial and offered no objections to the charge, charge error does not re-

quire reversal unless appellant shows "egregious harm." *Almanza*, 686 S.W.2d at 174.

**1. Did the trial court err in denying appellant's request to change the jury charge regarding extraneous-offense evidence in the guilt-innocence phase?**

In the jury charge for the guilt-innocence phase, appellant requested changes to clarify which child, Tina or Alice, and which offenses were to be considered by the jury in assessing guilt. Appellant requested that one page of the instructions pertain to Tina's charged allegations so that "the jury could have believed the other charged offense constituted an extraneous offense and have considered that against the appellant." Appellant sought changes to the instructions for another page involving Rule 404(b) evidence to pertain to "anyone other than complainant," namely Alice. Additionally, appellant alleges error in the trial court's denial of his request that the jury could not consider Alice's testimony at all on the basis that Alice's testimony was not admissible for any reason.

▇▇▇ The guilt-innocence charges, of which appellant complains, contain article 38.37 language as promulgated in the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (Vernon 2005). Article 38.37 of the Texas Code of Criminal Procedure provides:

Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child complainant who is the victim of the alleged offense shall be admitted for its bearing on all relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

*Id.* § 2. Section 4 of article 38.37 does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law. *Id.* § 4. The guilt-innocence charges contain article 38.37 instructions as set forth below:

You are further instructed that if there is any evidence before you in this case regarding the defendant's committing other crimes, wrongs, or acts against the child who is the complainant of the alleged offense in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or acts, against the child, if any, and even then you may only consider the same in determining its bearing on relevant matters, including (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child for no other purpose.

▇▇▇ Article 38.37 allows for the admission of other crimes, wrongs, or acts to be admitted when relevant. *Phillips v. State*, 193 S.W.3d 904, 911 (Tex.Crim.App.2006). The extraneous-offense evidence of other incidents of sexual abuse involving Tina was relevant under article 38.37 to prove other matters including the state of mind of appellant and Tina and the previous and subsequent relationship between them. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2. The charge, including the 38.37 instruction, did not limit the jury's consideration of the extraneous evidence involving Tina because any extraneous offenses involving Tina may have "bearing on relevant matters." *See id.* Because any extraneous-offense evidence involving Tina was relevant and admissible for the purposes listed under 38.37, an instruction limiting the jury's consideration of extra-

neous-offense evidence to only appellant's charged conduct with Tina would have improperly restrained the jury from considering such evidence in violation of article 38.37. *See id.*

■■■ As discussed above, Alice's testimony was admissible under Rules 404(b) and 403 to rebut appellant's defensive theory of retaliation. *See Moses,* 105 S.W.3d at 627. Therefore, appellant's complaint that Alice's testimony could not be considered at all lacks merit. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37, § 4 ("This article does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law."). Furthermore, an instruction limiting the jury's consideration of extraneous-offense evidence only to that extraneous conduct between appellant and Alice, as "anyone other than the complainant," would have placed an improper restraint on the jury in violation of article 38.37. *See id.* § 2 (permitting extraneous-offense evidence involving complainant for relevant purposes). We hold the trial court did not err in denying appellant's requested changes regarding extraneous-offense evidence given the permissible purposes under Rule 404(b) and article 38.37. *See Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App. 1986) (requiring error to exist in the charge).

Even if the trial court had erred, there would be no basis for reversal. Given Alice's testimony, the defensive theory of retaliation, and Tina's accounts of ongoing abuse, no harm exists when viewed in light of the entire jury charge, the evidence, and the record as a whole when any extraneous-offense evidence was properly admitted under article 38.37. *See Bailey v. State,* 867 S.W.2d 42, 43 (Tex.Crim.App. 1993); *Almanza,* 686 S.W.2d at 171. Accordingly, we overrule appellant's eighth issue.

**2. Did the trial court err in denying appellant's request to advise the jury in the jury charge of the trial court's power to stack sentences in the punishment phase?**

In his ninth issue, appellant complains the trial court abused its discretion in the punishment phase in denying his request to advise the jury of the trial court's power to stack the sentences in each case. Under appellant's theory, evidence at trial established that the charged offenses arose from the same criminal episode, and because the State filed a motion to cumulate, the trial court was required to charge the jury fully and affirmatively on the applicable law. According to appellant, the trial court took the issue of punishment from the province of the jury in violation of his constitutional and statutory rights, and appellant claims harm in that the jury could have assessed a lower sentence on each case.

■■■ A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007); *Taylor v. State,* 856 S.W.2d 459, 470 (Tex.App.-Houston [1st Dist.] 1993), *aff'd,* 885 S.W.2d 154 (Tex.Crim. App.1994). If evidence presented at trial raises an issue, and a jury charge is requested on that issue, then a charge on that issue must be given. *Taylor,* 856 S.W.2d at 470.

■■■ Presuming without deciding that error exists, the error is harmless. *See Harvey v. State,* 821 S.W.2d 389, 391 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). Reversal is required for an error that has been properly preserved only if "some harm" to the accused results from the error or if the error is "calculated to injure the rights of the defendant." *Id.; see* TEX.CODE CRIM. PROC. ANN. art. 36.19; *Almanza,* 686 S.W.2d at 171; *Booker v.*

*State,* 712 S.W.2d 853, 857 (Tex.App.-Houston [14th Dist.] 1986, pet. ref'd). In assessing harm, the reviewing court considers the entire jury charge, the state of the evidence, the arguments of counsel, and other relevant information as found in the record as a whole. *Almanza,* 686 S.W.2d at 171; *Harvey,* 821 S.W.2d at 391. When taken as a whole, the record reflects the jury was informed of the trial court's authority to stack the sentences when, during deliberations, the jury sent a note to the trial judge questioning whether the sentences would run concurrently or consecutively. In a written response, the trial judge offered, "It is within the court's discretion whether the sentences will run concurrently or consecutively." Based on the above analysis, error, if any, by the trial court in its refusal to include an instruction on its power to stack sentences does not require reversal. *See Almanza,* 686 S.W.2d at 171. No actual harm is demonstrated in the record. *See Harvey,* 821 S.W.2d at 391. Accordingly, we overrule appellant's ninth issue.

**E. Did the trial court err in rendering inconsistent judgments, which subsequently resulted in improper stacking of the sentences and violated appellant's due process rights?**

Appellant contends in his tenth issue that the trial court's judgments are inconsistent and, thus, render the stacking of the sentences improper and unconstitutional as a violation of his due process rights. Specifically, appellant complains the judgments in his consolidated trial are inconsistent because one judgment specifies that the sentences "shall run concurrently" and the other judgment specifies that the sentences "shall run consecutively."

■■■ With respect to appellant's argument that his due-process rights were violated by the inconsistent judgments and

improper stacking, appellant provides no analysis or citations to the record or legal authorities. To present an issue for appellate review "the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(h). Appellant has not addressed any of the governing legal principles or applied them to the facts of this case. *See King v. State,* 17 S.W.3d 7, 23 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Appellant's brief contains only a heading for his tenth issue indicating that stacking the sentences is unconstitutional as a violation of due process, but statements which cite no authority present nothing for appellate review. *Id.; see also Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim.App.1992). Therefore, appellant has waived this issue. *See* Tex.R.App. P. 38.1(h); *King,* 17 S.W.3d at 23; *Vuong,* 830 S.W.2d at 940.

■■■ Under article 42.08 of the Code of Criminal Procedure, the trial judge has the discretion to cumulate the sentences for two or more convictions. Tex.Code Crim. Proc. Ann. art. 42.08(b) (Vernon 2006); *Smith v. State,* 575 S.W.2d 41, 41 (Tex.Crim.App.1979); *Harvey,* 821 S.W.2d at 392. Cumulative sentencing is permitted only as provided by statute. *Cook v. State,* 824 S.W.2d 634, 641 (Tex.App.-Dallas 1991, pet. ref'd) (per curiam). When a defendant has been convicted in two or more cases, the trial court has discretion to order the judgment and sentence in the second conviction to either (1) begin to run after the judgment and sentence imposed in the preceding conviction ceased to operate, or (2) run concurrently with the judgment and sentence imposed in the preceding conviction. Tex.Code Crim. Proc. Ann. art. 42.08(a). When the convictions arise out of the "same criminal episode" and the cases are tried together, the sentences must run concurrently un-

less, as in this case, the convictions are for certain, specific offenses—like aggravated sexual assault of a child—in which case the trial court may exercise its discretion to cumulate or stack the sentences. *See* TEX. PENAL CODE ANN. § 3.03 (indicating that sentences for convictions under Texas Penal Code §§ 22.011 and 22.021 shall run concurrently or consecutively); *Nicholas v. State*, 56 S.W.3d 760, 765 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). We review the trial court's decision to stack or cumulate sentences for an abuse of discretion. *Nicholas*, 56 S.W.3d at 765. So long as the law allows the imposition of cumulative sentences, the trial judge has absolute discretion to stack sentences. *Id.*

▆▆▆ Appellant contends the sentences rendered in the judgments are inconsistent. The record contains two "Motions to Cumulate" and the accompanying signed orders granting the motions. The judgment for cause number 1045924 indicates that appellant, who is convicted of aggravated sexual assault of a child, would be sentenced to confinement for a period of sixty years. The judgment for cause number 1045925 indicates that appellant would be sentenced to confinement for a period of sixty years, which is a sentence that is to run consecutively. The judgment for Cause Number 1045925 is accompanied by a special finding or order that the sentence will run consecutively and "shall begin only when the judgment and sentence in the following case has ceased to operate: 1045924." Furthermore, the record indicates that the trial court orally pronounced that for Cause Number 1045924, appellant will "serve 60 years in accordance with the laws of the State of Texas, and that upon completion of that sentence, [appellant will] then begin to serve 60 years in the Texas Department of Criminal Justice Institutional Division" as assessed for conviction in Cause Number 1045925. When there is a variation between the oral pronouncement and the written memorialization of the sentence, the oral pronouncement controls. *Coffey v. State*, 979 S.W.2d 326, 328 (Tex.Crim. App.1998). In this case, the cumulation order on the judgment for Cause Number 1045925 is consistent with the trial court's oral pronouncement of the sentence. Moreover, the cumulation order, along with the judgment in Cause Number 1045925 is "sufficiently specific to allow the Texas Department of Criminal Justice–Institutional Division ... to identify the prior with which the newer conviction is cumulated." *Ex parte San Migel*, 973 S.W.2d 310, 311 (Tex.Crim.App.1998). When, as in this case, the same court sentences the defendant in both causes, the cumulation order is sufficient if it simply makes reference to the previous cause number. *Hamm v. State*, 513 S.W.2d 85, 86–87 (Tex.Crim.App.1974); *Edwards v. State*, 106 S.W.3d 833, 846 (Tex.App.-Dallas 2003, pet. ref'd); *Faison v. State*, 59 S.W.3d 230, 238 (Tex.App.-Tyler 2001, pet. ref'd) (holding that the cumulation order need not contain anything more than the cause number of the previous conviction if the record contains evidence that the same judge presided over the previous and subsequent convictions). Because the judgment in Cause Number 1045925 renders a sixty-year sentence under that cause number that "shall run consecutively and shall begin only when the judgment and sentence in the following case has ceased to operate: 1045924," and the record reflects the same judge presided over both convictions, there is no inconsistency in the judgments. The trial court did not abuse its discretion in rendering the sentences to run consecutively. *Nicholas*, 56 S.W.3d at 765. Therefore, we overrule appellant's tenth issue.

The trial court's judgment is affirmed.