Affirmed and Memorandum Opinion filed July 30, 2009








Affirmed and Memorandum Opinion filed July 30, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO.  14-07-01047-CR

____________

 

STEVEN BRIONES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No.  1068432

 



 

M E M O R A N D U M   O P I N I O N

Steven Briones was convicted of aggravated sexual assault
of a child under the age of fourteen and sentenced to fifty years in the
Institutional Division of the Texas Department of Criminal Justice.  Briones
challenges his conviction and sentence, contending that the trial court
improperly admitted hearsay information contained within the complainant=s medical records
and erred in admitting improper expert testimony.  We affirm.

 








I

Steven Briones and Belinda Thomas were married and had
three children including the complainant, a daughter.  After Briones and Thomas
divorced, Briones was allowed supervised visitation of the children, although
at times the visitations went unsupervised.  The home where Briones lived
consisted of just one bedroom and a living room.  Because of the close
confines, the children often shared a bed with their father.  The complainant
testified that, while lying in bed during one of the visitations, her father
began touching her inappropriately and then sexually  assaulted her.  The
complainant further testified that after the first incident, Briones sexually
assaulted her on multiple occasions up until the last time she saw him around
September 2005.

Six months later, the complainant told her mother about the
incidents.  After Thomas contacted the police, the complainant was taken to the
Children=s Assessment
Center (the Acenter@) in Houston.  Upon arrival, the
complainant was subjected to a thorough physical examination, as well as an
interview in which she was asked multiple questions about the incidents with
Briones.  Dr. Reena Isaac conducted the physical examination, and later
testified at trial about specific statements the complainant made to her. 
Based on the information obtained at the center, criminal charges were filed,
and Briones was arrested. 

Briones was charged with sexual assault of a child under
the age of fourteen.  A jury convicted Briones and the court sentenced him to
fifty years in the Texas Department of Criminal Justice Institutional
Division.  This timely appeal followed. 

Briones=s appeal was submitted to this court for
consideration on January 15, 2009, without a response brief filed by the
State.  After no further communication with this court, the State filed its
brief on July 14, 2009, along with a motion for an extension of the time to
file its brief.  We deny the State=s motion, and
consider Briones=s appeal solely on his brief.

 








II

Briones appeals his conviction on two grounds, contending
that the trial court both  improperly admitted hearsay information contained
within the complainant=s medical records and erred in admitting
improper expert testimony.  

A

In his first issue, Briones contends that the trial court
erred by admitting medical records, and testimony related to those records,
which contained hearsay evidence implicating him in the offense.  Specifically,
Briones complains that both the medical records and Dr. Isaac=s trial testimony
discussing them contain a statement by the complainant identifying Briones as
her assailant.  Briones further argues that the hearsay statement is not
admissible under the medical-records exception to the hearsay rule because it
was not pertinent to a medical diagnosis or treatment, and the State failed to
establish that the complainant understood the importance of being honest at the
time she made the statement.

But even if the trial court erred in admitting this
testimony, the error would be harmless because the same information was
properly admitted without objection through other witnesses.  See Brooks v.
State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); Bargas v. 
State, 252 S.W.3d 876, 897 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  The complainant herself testified at trial and
identified Briones as her assailant.  Further, the complainant=s mother testified
as an outcry witness, stating that the complainant had identified Briones as
her assailant.  Consequently, any error caused by the trial court=s admission of
this statement was harmless.  See Bargas, 252 S.W.3d at 897.

We overrule Briones=s first issue.

 

 








B

In his second issue, Briones contends that the trial court
admitted improper expert testimony.  Specifically, Briones asserts that the
court should not have permitted testimony from Dr. Lawrence Thompson because
Dr. Thompson was not qualified to offer the testimony and because Dr. Thompson=s testimony was
unreliable and irrelevant. 

We use the abuse-of-discretion standard to review a trial
court=s decision on
whether to allow expert testimony. See Gallo v. State, 239 S.W.3d 757,
765 (Tex. Crim. App. 2007), cert. denied, 128 S.Ct.  2872 (2008). 
Before reversing the trial court=s decision, we
must find the trial court=s ruling was so clearly wrong as to lie
outside the realm within which reasonable people might disagree.  Taylor v.
State, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); Green v. State,
191 S.W.3d 888, 895 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).

After the State rested its case at trial, Briones called
several family members as witnesses, some of whom testified that they had seen
the complainant during the period after the alleged assaults began but before
Briones was formally accused.  These witnesses testified that they observed
Briones and the complainant interacting in a normal and loving fashion, with no
indication from the complainant that she feared or disliked her father.  

When the defense rested, the State called Dr. Thompson as a
rebuttal witness.  Dr. Thompson testified that, as the director of therapy and
psychological services at the center, he was familiar with the behaviors
exhibited by child victims of sexual abuse.  He also stated that, based on his
experience, such victims may exhibit many different patterns of behavior after
their abuse. Dr. Thompson testified that it was not uncommon for some child
victims to behave normally around adult abusers with no outward demonstrations
of anxiety or depressionCeven when their abusers were family
members.








Before this testimony, the trial court conducted a Agatekeeper@ hearing outside
the presence of the jury to determine Dr. Thompson=s qualifications
as an expert witness, as well as the appropriateness of his intended
testimony.  After the State=s proffer, Briones objected to the
testimony on the basis that the State had neither specified the area of
scientific knowledge upon which Dr. Thompson would testify, nor how Dr. 
Thompson was qualified to testify on that specific body of knowledge. Briones
also objected that Dr. Thompson=s testimony was unreliable and irrelevant.

Given the opportunity to strengthen its proffer, the State
showed that Dr.  Thompson would testify on the general behavior of child
sexual-abuse victims, and how post-abuse behaviors can vary widely according to
the personalities and histories of each victim.  Further, the State asserted
that Dr. Thompson=s academic and professional background,
which focused specifically on the treatment of child sexual-abuse victims, as
well as his study of the professional literature in the field, qualified him to
offer such testimony.  Despite Briones=s renewed
objection, the trial court found Dr. Thompson qualified as an expert witness in
this area and the trial resumed.                                             

The Court of Criminal Appeals has held that a trial court
must make three separate inquiries in determining whether it should admit
expert testimony: (1) Does the witness qualify as an expert by reason of his
knowledge, skill, experience, training, or education; (2) is the subject matter
of the testimony an appropriate one for expert testimony; and (3) will
admitting the testimony actually assist the fact‑finder in deciding the
case?  See Vela v. State, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)
(relying on Tex.  R.  Evid. 104(a), 401, 402, and 702, and quoting Rodgers
v. State, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006)).  These conditions
are commonly referred to as qualification, reliability, and relevance.  Id. 
at 131.

1








Briones=s first objection is that Dr. Thompson was
not qualified to testify in the specific area that formed the central thesis of
his testimonyCdemonstrated behaviors of child sexual-abuse victims. 
Because a witness will not always qualify as an expert merely by virtue of a
general background, qualification is a two‑step inquiry.  Vela,
209 S.W.3d at 131.  A witness must first have a sufficient background in a particular
field; but a trial judge must then determine whether that background A>goes to the very
matter on which [the witness] is to give an opinion.=@  Id.
(quoting Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996).  The
proponent also must A>establish that the
expert has >knowledge, skill, experience, training, or education= regarding the
specific issue before the court which would qualify the expert to give an
opinion on that particular subject.=@ Id. at
132.  Just as the subject matter of an expert=s testimony should
be tailored to the facts of a case, the expert=s background must
be tailored to the specific area of expertise about which he intends to
testify.  Id.  at 133.

In this case, Dr. Thompson testified to having both a
masters degree and a Ph.D. in clinical psychology.  He stated that his doctoral
dissertation concerned personality disorders and sexual abuse of children.  He
described having served a clinical and practical internship at the University
of Michigan where he worked with child victims of sexual abuse and their
families.  Dr. Thompson further related that he has worked at the center since
2001, first as a staff psychologist, and ultimately as the director supervising
all counselors and psychologists.  Since being licensed as a psychologist, he
has worked with and observed more than 300 child victims of sexual abuse. 
Based on this evidence, the trial court did not abuse its discretion in finding
that Dr. Thompson=s educational and professional background
and experience qualified him to provide expert testimony.

Briones contends that Dr.  Thompson was unqualified in this
case partly because his Ageneral background@ did not
sufficiently meet the Vela test of matching Athe very matter on
which the witness is to give an opinion.@  Id.  at
131.  But Dr. Thompson=s academic and professional background
focusing on the treatment and observation of child victims of sexual abuse
appropriately matches subject matter of his testimony focusing on the
behavioral patterns of child victims of sexual abuse.   

 








2

Briones also challenges the trial court=s admission of
Dr.  Thompson=s testimony on the basis that it was not appropriate
subject matter for presentation to the jury.  To support this argument, Briones
contends that there was not enough foundation laid to show the testimony to be
reliable, and that it was too vague. 

As we noted above, the reliability analysis turns on the
subject matter of the witness=s testimony.  Vela, 209 S.W.3d at
133.  Texas Rule of Evidence 705(c) governs the reliability of expert testimony
and provides that A[i]f the court determines that the
underlying facts or data do not provide a sufficient basis for the expert=s opinion under
Rule 702 or 703, the opinion is inadmissible.@ Tex. R. Evid.
705(c); Vela, 209 S.W.3d at 133.  A>[R]eliability
depends upon whether the evidence has its basis in sound scientific
methodology.  This demands a certain technical showing.=@  Vela, 209
S.W.3d at 133 (quoting Jordan v. State, 928 S.W.2d 550, 555 (Tex.  Crim.
App. 1996)). 

In determining the admissibility of scientific evidence,
the threshold question is Awhether that testimony will help the trier
of fact understand the evidence or determine a fact in issue.@  Kelly v.
State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992); In re E.C.L., 278
S.W.3d 510, 519 (Tex. App.CHouston [14th Dist.] 2009, pet. filed); see
also Tex. R. Evid. 702 (providing that evidence should be admitted A[i]f scientific,
technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue@).  Proving
reliability requires that the proponent establish: (1) the underlying scientific
theory is valid; (2) the technique applying the theory is valid; and (3) the
technique has been properly applied on the occasion in question.  Kelly,
824 S.W.2d at 573.  








But in Nenno v. State, the Court of Criminal Appeals
determined that the Kelly inquiries could not easily be applied to
analyze Asoft sciences@ when the validity
of a theory or technique may be roughly accurate, but somewhat misleading.  970
S.W.2d 549, 560B61 (Tex. Crim. App. 1998), overruled on
other grounds, State v. Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App.
1999).  When Asoft sciences@ such as
psychology are at issue, the trial court should inquire: (1) whether the field
of expertise is legitimate; (2) whether the subject matter of the expert=s testimony is
within the scope of that field; and (3) whether the expert in his  testimony
properly relies upon or uses the principles involved in that field.  Id.
at 561; In re E.C.L. 278 S.W.3d at 519B20.  The Nenno court
further emphasized that the reliability question under both Kelly and Daubert
v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), is a flexible
one, and that the general approach of the rules of evidence is to relax the
traditional barriers to opinion testimony. Nenno, 970 S.W.2d at 561; In
re E.C.L. 278 S.W.3d at 519B20; see also Daubert, 509 U.S. at
588B89.

Dr. Thompson=s testimony
related specifically to the observed behavior and treatment of child
sexual-abuse victims.  As Dr. Thompson obtained a doctoral degree from the
University of Michigan in the treatment of child sexual-abuse victims, and such
treatment is the reason and basis for the center=s existence, we
are satisfied that the Afield of expertise@ related to
treatment of child victims of sexual abuse is a legitimate one.  See Nenno,
970 S.W.2d at 561; In re E.C.L. 278 S.W.3d at 519B20.  Further, Dr.
Thompson based his testimony on observations drawn not only from his study of
the professional literature, but also from having treated and studied more than
300 child sexual-abuse patients.  Based on this experience, we are satisfied
that the subject matter of Dr. Thompson=s testimony is
within the scope of his field of expertise.  See Nenno, 970 S.W.2d at
561; In re E.C.L. 278 S.W.3d at 519B20.








 Dr. Thompson=s testimony
related not to any specific theory or syndrome, but rather to his general
knowledge of the behavior of child sexual-abuse victims.  Dr. Thompson
substantiated these observations based on his education, practice, experience,
and the professional literature which he described to the court.  Briones
contends that Dr. Thompson neither sufficiently described this literature, nor
made it available to the court.  But the record shows that Dr. Thompson relied
upon and pointed the trial court to at least two sets of materials that he
testified are published in prominent professional journals used by experts in
the field.  Based on this demonstration, we are satisfied that, in his
testimony in this case, Dr. Thompson properly relied upon the principles
involved in his field.  See Nenno, 970 S.W.2d at 561; In re E.C.L. 278
S.W.3d at 519B20. 

In disputing the reliability of Dr. Thompson=s testimony,
Briones cites Viterbo v. Dow Chemical Co., 826 F.2d 420 (5th Cir.
1987).  In Viterbo, a case upon which the Court of Criminal
Appeals relied in Vela, the Fifth Circuit affirmed a trial court=s exclusion of an
expert witness on the basis that his proposed testimony was unreliable.  Id.
at 424.  Agreeing with the trial court, the Fifth Circuit held that the
proposed testimony in that case was Ano more than [the
plaintiff] Viterbo=s testimony dressed up and sanctified as
the opinion of an expert.@  Id. at 424.

But the facts in Viterbo differ from those in this
case in significant ways.  First, the Fifth Circuit noted that the data upon
which Viterbo=s proposed expert witness based his conclusion was Alacking in
reliability and probative value.@  Id.  at
421B22.  For example,
the expert concluded that Viterbo=s illness was
caused by exposure to allegedly toxic fertilizer based almost solely on Viterbo=s oral historyComitting critical
information such as family history and prior treatment for similar symptoms.  Id.
at 422B23.  Also, the
expert had relied upon inadequate testing to support his conclusion.  Id.
at 423.  Finally, in reaching his conclusion, Viterbo=s expert relied
upon a study involving the effect of chemical exposure on rats, when there was
no evidence that Viterbo had been exposed to comparable amounts, or that his
symptoms were at all similar to those exhibited by the rats.  Id. at
424.  These facts differ substantially from those in this case, in which Dr.
Thompson testified about his observations of victim behavior based both on
having treated more than 300 sexually abused children and clinical research
within the field.








A second and perhaps more important difference with Viterbo
is that the proposed expert opinion in that case was a conclusive finding of
causationCspecifically stating that Viterbo=s exposure to the
fertilizer caused his illness.  Id. at 422.  In the present case, Dr. 
Thompson gave only general testimony about the broad range of behaviors that he
and others in his field have observed in sexually abused children.  He readily
admitted that he had not interviewed the complainant, and did not attempt to
draw any specific conclusions about her case.  

These significant differences between the facts in each
case demonstrate that Briones=s reliance on Viterbo is
misplaced.  Based on the evidence provided, the trial court did not abuse its
discretion in determining that Dr. Thompson=s  proposed expert
testimony was reliable.       

3

Finally, Briones contends that Dr. Thompson=s testimony was
improper because it was not of the type that would assist the jury in its
fact-finding, and therefore not relevant.  Evidence is relevant if it has Aany tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.@  Tex. R. Evid. 401; Bargas, 252 S.W.3d at
899.   To be relevant, evidence must be both material and probative. Miller
v. State, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001); Bargas, 252
S.W.3d at 899.  Evidence is material if it proves any fact of consequence to
the determination of the action.  Tex.R. Evid. 401; Miller, 36 S.W.3d at
507; Bargas, 252 S.W.3d at 899. 








The State offered Dr. Thompson=s testimony to
rebut the testimony of the defense witnesses that the complainant=s behavior around
Briones appeared normal, demonstrating no anger or indifference on her part. 
Dr. Thompson testified that such behavior would not necessarily negate sexual
abuse because  such victims have been observed to react to their abusers in
many different waysCsometimes with no outward demonstrations
of anger or depression.  Dr. Thompson=s testimony was
relevant because it (1) directly rebutted the defense witnesses= testimony; and
(2) tended to make less probable the defense contention that observed
interactions between complainant and Briones suggested a normal relationship.  See
Schutz v. State, 957 S.W.2d 52, 58B59 (Tex. Crim.
App. 1997); see also Johnson v. State, 970 S.W.2d 716, 720 (Tex. App.CBeaumont 1998, no
pet.)  (expert testimony that sexual abuse had probably occurred was not an
improper conclusion where witness was in a position to assist the trier of fact
in determining an issue over which the jury was not qualified to the best
possible degree and witness did not express an opinion regarding whether
defendant was the perpetrator or express an expert opinion regarding
credibility of any witness). 

Briones argues unconvincingly on appeal that Dr. Thompson=s testimony was
conclusory, serving only to bolster the testimony of the complainant.  First,
Dr.  Thompson=s testimony could not have been conclusory as it drew
no conclusions.  As described above, Dr. Thompson did not vouch for the
truthfulness of the complainant=s allegations, or express an opinion as to
whether or not sexual abuse had even occurred in this case.  Furthermore, Dr.
Thompson did not offer an opinion that Briones was the person who had abused
the complainant.  Rather, he spoke only generally about the demonstrated
behaviors of child sexual abuse victims.  Ultimately, it was still up to the
jury to determine whether the complainant=s lack of Aacting out@ in front of
family members affected the credibility of her allegations of sexual abuse.  








Second, Dr. Thompson could not have bolstered the
complainant=s testimony as her veracity had already been called
into question by Briones=s defense.  ABolstering@ is the use of
evidence solely for the purpose of improperly adding credence to a particular
witness or source of evidence Awithout substantively contributing >to make the
existence of [a] fact that is of consequence to the determination of the action
more or less probable than it would be without the evidence.=@  Cohn v. State,
849 S.W.2d 817, 819B20 (Tex. Crim. App. 1993) (quoting Tex. R.
Evid. 401); see also Rivas v. State, 275 S.W.3d 880, 886B87 (Tex. Crim.
App. 2009) (indicating that Abolstering@ has ties to the
former version of Texas Rule of Evidence 613(c), which involves prior
consistent statements, and reiterates principles of hearsay).  It is not Abolstering@ when the
additional evidence makes a substantive contribution, corroborates other
evidence, or has an incrementally further tendency to establish a fact of
consequence. Cohn, 849 S.W.2d at 819B20.  Accordingly,
as substantive evidence, an expert may testify that a child exhibits symptoms
consistent with sexual abuse, but that expert witness may not offer an opinion
as to the child=s truthfulness.  Id. at 820B21. 

As the defense already had called the truthfulness of the
complainant=s testimony into question by presenting the family
members= testimony against
her, Dr. Thompson was a legitimate rebuttal witness.  Because Dr. Thompson=s testimonyCwithout being
conclusoryCprovided additional scientific information on an issue
for which the jury was not otherwise qualified to the Abest possible
degree@ to decide an
important issue of fact, it was relevant, and therefore of the type likely to
assist the jury.  See id. at 820.  Based on this reasoning, we cannot
say that the trial court=s decision to admit Dr.  Thompson=s testimony was an
abuse of discretion.  

We overrule Briones=s second issue.

* * *

For the foregoing reasons, we affirm the trial court=s judgment.

 

 

 

 

/s/      Jeffrey V.  Brown

Justice

 

 

Panel consists of
Justices Frost, Brown, and Boyce.

Do Not Publish C Tex.  R.  App.  P.  47.2(b).