Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio





# MEMORANDUM OPINION

No. 04-10-00379-CR

John **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-3663
Honorable Raymond Angelini, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Phylis J. Speedlin, Justice
           Rebecca Simmons, Justice
           Steven C. Hilbig, Justice

Delivered and Filed:  May 11, 2011

AFFIRMED

John Rodriguez appeals his conviction of indecency with a child by sexual contact.  We affirm the trial court's judgment.

### BACKGROUND

Based on allegations of sexual assault made by A.G., a female child younger than 14 years old, Rodriguez was charged with one count of aggravated sexual assault of a child by digital penetration of the female sexual organ, and one count of indecency with a child by sexual

contact. After a jury trial, Rodriguez was found "not guilty" of aggravated sexual assault, but "guilty" of indecency with a child. Based on the jury's recommendation, the court assessed a five year term of imprisonment, but suspended it and placed Rodriguez on community supervision for a term of seven years with a period of 180 days in jail. Rodriguez now appeals.

## ANALYSIS

### *Legal Sufficiency*

In his first issue, Rodriguez asserts the evidence is legally insufficient to support his conviction for indecency with a child by contact. In reviewing the legal sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

Count Two of the indictment alleged that, on or about May 11, 2007, Rodriguez intentionally and knowingly engaged in sexual contact with A.G., a female child younger than 17 years of age and not his spouse, by touching part of the genitals of A.G. with intent to arouse or gratify the sexual desire of any person. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West Supp. 2010). The statute defines "sexual contact" as "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" committed with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c)(1) (West Supp. 2010). Therefore, in order to obtain a conviction on Count Two, the State was required to prove that Rodriguez (1) engaged in sexual contact by touching part of the genitals (2) of A.G., a child

younger than 17 years of age, (3) with intent to arouse or gratify the sexual desire of any person. It is undisputed that A.G. was younger than 17 years old, and not the spouse of Rodriguez,[1] at the time of the sexual contact. Thus, our legal sufficiency review will focus on the first and third elements of the offense.

Three witnesses testified during the guilt/innocence phase of the trial on March 30, 2010. A.G., eleven years old, testified that she and her younger sister were living with her grandparents three years before trial. Her aunt and uncle and their children lived in the house directly behind her grandparents' house, and A.G. used to go over there "basically all the time." Her uncle's brother, John Rodriguez, also lived there and often played with the children. A.G. liked to play in her cousin Destiny's room, and sometimes she would lie on the bed and watch TV. A.G. liked being around Rodriguez, who was always very nice and would play with them. A.G. testified that Rodriguez "touch[ed] me in my private part" about five or six times when she was lying on Destiny's bed. A.G. clarified that her "private part" meant the bodily part she uses to urinate. On those occasions, the other children were usually in the room watching TV, and Rodriguez would cover A.G. with blankets and then "stick his hand under the blanket and put them inside of . . . my pants." A.G. explained that Rodriguez would undo the zipper or hook and touch her "under the pants." When he was touching her, A.G. stated Rodriguez would "use his three fingers . . . [the] pointy finger, the bad finger, and the finger next to the pinky." A.G. demonstrated for the jury, explaining that Rodriguez would use two fingers to "push apart" and "would use the bad finger to, uh, poke at my middle part." A.G. stated she knew he used three fingers because she could feel it on top of her underwear, and one time Rodriguez's fingers

---

[1] Under the law in effect at the time Rodriguez committed the offense, the State was also required to prove A.G. was not the spouse of Rodriguez at the time of the offense. TEX. PENAL CODE ANN. § 21.11(a) (West 2003). As amended effective September 1, 2009, the statute deletes that element and makes it an affirmative defense if the actor was the spouse of the child at the time of the offense. TEX. PENAL CODE ANN. § 21.11(b–1) (West Supp. 2010).

"went under [her] underwear." A.G. stated she knew that what he was doing was wrong, but she did not tell anyone because she was scared and did not know what to say. A.G. later told an investigator who came to her school that Rodriguez had touched her inappropriately.

On cross-examination, A.G. stated she knew the difference between the truth and a lie, and admitted that she had previously told some lies about "important things." For example, A.G. said she might lie to an investigator so she could spend more time with her mother even though it would be wrong to lie. A.G. confirmed being around Rodriguez at a couple of family events after she made the allegations and the investigator told her to stay away from Rodriguez. A.G. stated that one of the touching incidents happened after she told the investigator. A.G. also admitted telling a different investigator that the touching by Rodriguez occurred 14 times, telling Detective Sweeney that it may have happened eight times, and telling a relative that it occurred maybe four times. A.G. explained she gave different numbers because she was scared and it was "hard to remember everything in talking to them," and now she was looking back and remembering more clearly that it was five or six times.

Bertha Gonzales, A.G.'s grandmother, testified that A.G. lived with her from February 2007 to September 2007 when she was eight and nine years old. Bertha's daughter Laura, her husband Chris, and their young children lived in the house behind them. John Rodriguez, the brother of Laura's husband, also lived there during this time period in 2007. He was like part of the family and was always playing with the children, especially Destiny because he is her godfather; Bertha described Rodriguez as a "good guy." A.G. went over to her Aunt Laura's house several times each week to play with her cousins. A.G. never told Bertha about her allegations against Rodriguez, but Bertha became aware of them and she talked to Detective Sweeney about the allegations on October 31, 2007. Bertha did talk to A.G. about the

seriousness of the allegations and that she needed to be sure she was telling the truth; A.G. assured her she was telling the truth and was not making it up. Bertha stated that A.G. has gotten her sister in trouble before by telling "little white lies." Bertha explained she did not take A.G. for a medical exam when she learned of the allegations because it had been too long.

Finally, Detective Peter Sweeney of the San Antonio Police Department's sex crimes unit testified briefly about how and when he received the case as a referral from Child Protective Services (CPS). Sweeney testified he received the referral of A.G.'s case from CPS on September 11, 2007; he interviewed A.G. on October 25, 2007; and he did not refer her for a sexual assault examination. Even though the State designated Rhonda Sanchez, the investigator who spoke to A.G., as the outcry witness, she did not testify. No medical evidence was admitted. Both sides rested and closed after Sweeney's testimony.

In his brief, Rodriguez makes two arguments about why the evidence is insufficient: (1) A.G.'s testimony was not corroborated by any other evidence; and (2) A.G.'s testimony was inherently unreliable because A.G. gave inconsistent stories about how many times the sexual contact occurred and had admittedly told some lies in the past.

As to the first argument, article 38.07 plainly states that a conviction for a sexual offense under Chapter 21 of the Penal Code may be based solely on the uncorroborated testimony of a child victim who was 17 years old or younger at the time of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1) (West 2005) (providing that the requirement in subsection (a) that the victim inform another person of the alleged offense within one year of the offense does not apply to a child victim younger than 17 years of age). While Rodriguez acknowledges the statutory language in his brief, he complains about the lack of corroboration of A.G.'s testimony by any medical evidence or any outcry testimony, citing several cases decided in the 1980s. Article

38.07 was amended in 1993 to repeal the corroboration or outcry requirement and permit conviction of certain sexual offenses, including those under Chapter 21, solely on the uncorroborated testimony of the child victim. *See Carmell v. Texas*, 529 U.S. 513, 517-18, 530 (2000) (conducting an ex post facto analysis, and recognizing the 1993 amendment to article 38.07 is a "sufficiency of the evidence rule" reducing the minimum quantum of evidence necessary to sustain a conviction); *see also Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). Under the current version of the statute, when a sexual abuse victim is 17 years old or younger, there is no requirement that the child victim inform another person about the offense, and a conviction for indecency with a child is supportable solely on the uncorroborated testimony of the child victim. TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (West 2005). Here, A.G. was eight years old at the time of the offense, and eleven years old at the time she testified at trial. Under the plain language of the statute, corroboration through medical evidence or outcry testimony was not necessary. *Id.*; *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.) (testimony of child victim is sufficient by itself to support conviction for indecency with a child); *Rodriguez v. State*, 997 S.W.2d 640, 643-44 (Tex. App.—Corpus Christi 1999, no pet.) (child victim's testimony did not have to be corroborated by physical evidence to support conviction of aggravated sexual assault).

As to Rodriguez's second argument concerning A.G.'s credibility, he stresses that in previous out-of-court statements A.G. gave various different numbers when asked how many times Rodriguez touched her sexually. In addition, Rodriguez points to the testimony by A.G.'s grandmother, Bertha, that A.G. told some "white lies" in the past, and A.G.'s admission that she might lie to CPS workers in order to spend more time with her mother, i.e., she would lie to get "certain results." It is the jury's role to resolve conflicts in the testimony, assess credibility and

weigh the evidence, and draw reasonable inferences from the basic facts to the ultimate facts; it was within the jury's province to assess A.G.'s credibility and choose to believe A.G.'s testimony. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Under the legal sufficiency standard of review, we must resolve any inconsistencies in the evidence in favor of the jury's verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). A.G. testified in detail about how Rodriguez touched her "private part" where she urinates, both on top of her underwear and underneath her underwear. The requisite intent for indecency with a child by sexual contact can be inferred from the defendant's conduct and all the surrounding circumstances. *Connell*, 233 S.W.3d at 466-67. The testimony that Rodriguez covered A.G. with blankets before touching her, and unzipped or unhooked her pants in order to touch her on top of and underneath her underwear supports a finding that, in touching A.G.'s genitals, Rodriguez acted with the requisite intent to arouse and gratify his sexual desire. The evidence is sufficient to support Rodriguez's conviction for indecency with a child by sexual contact. *See Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (child victim's testimony alone was sufficient to support convictions for aggravated sexual assault, despite child's unsophisticated terminology and rough time-frame of events, given her detailed descriptions of the sexual contact). Rodriguez's first issue is overruled.

### *Hearsay*

In his second issue, Rodriguez asserts the trial court erred in admitting hearsay through the testimony of Detective Sweeney. Rodriguez contends that, over objection, Sweeney was permitted to testify "regarding the date of the offense when all the officer could testify to was blatant hearsay." The record reveals no hearsay objection was ever raised by defense counsel. Instead, the record shows the trial court interrupted Detective Sweeney's testimony about how he

learned of the case to question its relevance. Further, it was the judge who warned the prosecutor, outside the jury's presence, that the officer could not testify to any hearsay. During the bench conference, the only objection raised by Rodriguez's counsel was that Sweeney's testimony was "bolstering" what the child said. The court denied that objection because the witness "hasn't said anything." After the jury returned, Sweeney testified, without any objection, that he received A.G.'s case as a referral from CPS in September 2007; he interviewed the child in October 2007; and he did not refer her to Child Safe or for a SANE exam. Defense counsel did not cross-examine Sweeney.

Here, Rodriguez's only objection to Sweeney's testimony was a "bolstering" objection, not a hearsay objection. When an appellant raises an issue on appeal that does not coincide with the objection made in the trial court, nothing is preserved for appeal. TEX. R. APP. P. 33.1(a); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Moreover, even if the issue was preserved, the record shows that Sweeney did not testify to any hearsay. He only testified to his own actions in receiving the case, interviewing the child, and deciding not to refer her for a SANE exam. Sweeney never testified to anything that A.G. told him. No hearsay was introduced through Sweeney's testimony. Rodriquez's second issue is overruled.[2]

Based on the foregoing reasons, the trial court's judgment is affirmed.

Phylis J. Speedlin, Justice

DO NOT PUBLISH

---

[2] Rodriguez devotes a substantial part of his discussion of this issue to article 38.072 which provides a hearsay exception for outcry statements made by a child victim. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 1, 2 (West Supp. 2010). However, both parties agree, and the record confirms, that no outcry witness testified in this case. Therefore, an article 38.072 analysis simply does not apply to the issue raised by Rodriguez.