# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00798-CR

**Adam Stanley, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
NO. C-1-CR-09-500156, THE HONORABLE MIKE DENTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Adam Stanley challenges his conviction for family violence assault. *See* Tex. Penal Code Ann. § 22.01 (West 2011). In a single point of error,[1] he asserts that the trial court erred in admitting evidence of an extraneous offense during the guilt-innocence phase of trial. We affirm the judgment of the trial court.

## BACKGROUND

The jury heard evidence that Randi Rodriguez began dating Stanley in late March or early April of 2008 and they lived together during their dating relationship. On December 28, 2008, Rodriguez and Stanley were watching television in their apartment when Stanley began to accuse

---

[1] Stanley's brief claims two issues are presented for appellate review, but then argues both in a single point of error. We will address his claims as they are argued in the body of his brief as a single point of error.

Rodriguez of cheating on him. Unwilling to discuss his accusations, Rodriguez went to lie down in the bedroom. Stanley continued to pursue the discussion, repeatedly going to the bedroom to confront Rodriguez with questions. Rodriguez eventually told Stanley to leave her alone because she had to go to work the next morning so she was going to sleep. Stanley left the room, but then came back and attacked Rodriguez as she lay in bed. He began punching her repeatedly all over her body, knocking her off the bed. He continued the attack after she fell to the floor, punching and kicking her as she lay curled up trying to protect herself. During the attack, Stanley landed a blow to Rodriguez's sternum causing her to lose her breath. She then sat up and attempted to crawl away. However, Stanley struck her in the side of the head causing her head to hit the corner of an armoire. Stanley than grabbed Rodriguez by the hair, dragging her ten to fifteen feet out of the bedroom toward the bathroom. At that point the assault ended. As Rodriguez sat on the floor and cried, feeling "like [her] body was on fire" because she hurt all over, she asked Stanley why he hurt her. Leaning against the wall near the bathroom, Stanley repeatedly apologized and said he was going to change. Stanley went back into the bedroom. Rodriguez got a pillow and some sheets and slept on the floor in the living room. She did not leave the apartment nor did she call the police.

The next morning, Rodriguez went to work. Her supervisor, Lori Lopez, noticed her crying and pressed her about what was wrong. Eventually, Rodriguez told her about the assault and showed Lopez a bruise on her upper thigh. Lopez, worried for Rodriguez, wanted to get her out of the situation as fast as possible. She took Rodriguez to her apartment to pack up her things and gave her money to get out of town. Lopez tried to convince Rodriguez to call the police, but Rodriguez expressed her belief that nothing would happen to Stanley and her concern that he would get away

2

and come after her. After packing up her things at her apartment, Rodriguez left town, driving to her parents' house in the Rio Grande Valley. While there, she contacted the local police about the assault, but was told she needed to contact the Austin police. Rodriguez also communicated with Stanley while out of town. He again apologized and again told her he would change. Hoping for a reconciliation, Rodriguez returned to Austin after a few days. She ultimately reported the assault to the Austin police on January 5, 2009, and photographs were taken of injuries.

Following Rodriguez's report, Stanley was arrested and charged by information with family violence assault. At trial, Rodriguez, Lopez, and the Austin police officer who took the report and photographs testified about the events described above. Stanley presented no witnesses. The jury found Stanley guilty and returned an affirmative finding on family violence. After the return of the verdict, the State and Stanley reached an agreement as to punishment. In accordance with the agreement, the trial court sentenced Stanley to one year in jail and assessed a $4,000 fine. The court suspended imposition of the jail sentence and fine and placed Stanley on community supervision for 18 months. This appeal followed.

## DISCUSSION

In his sole point of error, Stanley complains that the trial court erred in admitting extraneous-offense evidence that he assaulted Rodriguez on a prior occasion. He argues that his cross examination of Rodriguez did not "open the door" to the evidence, and that the probative value of the extraneous offense did not substantially outweigh the danger of unfair prejudice under Rule of Evidence 403. We overrule his point of error and affirm the conviction and sentence.

3

## Standard of Review

We review a trial court's decision to admit or exclude evidence—including its determination as to whether the probative value of evidence was substantially outweighed by its prejudicial effect—under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 2966 (2011). A trial court abuses its discretion only if its determination "lies outside the zone of reasonable disagreement." *Id.*; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court's decision to admit evidence of an extraneous offense is generally within this zone if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will uphold that decision. *Id.*

## The Admission of the Prior Assault

During cross examination, defense counsel questioned Rodriguez about her failure to call police to report the assault:

Q: Okay. Why did you not call 911 on that day?

A: The day I went back to work?

Q: Uh-huh?

A: I was scared. I just wanted to leave. I wanted to get out of here.

4

Q:      Okay, and so you were so scared on that day that you didn't even want to call the police?

A:      Not that I didn't want to.  Not that I didn't want to, but I didn't.


The State sought to offer evidence of a prior assault Stanley committed against Rodriguez approximately one to two months before the instant assault offense, arguing that defense counsel had opened the door to such evidence with the above exchange.  The State made the following proffer to the court, questioning Rodriguez outside the presence of the jury:

Q:      Have you ever tried to leave the defendant before, after the incident?

A:      Yes, ma'am.

Q:      And have you ever been unsuccessful in that attempt?

A:      Yes.

Q:      Can you tell us what happened in that previous attempt?

A:      Adam had been hitting me and I was in a sports bra and I really wanted to leave, so I threw on like a thermo long sleeve and opened the door.  My foot probably didn't even touch the ground and I just was pulled right back in and it continued.

. . .

Q:      And so when you were lying in the apartment that night on that December 28th, what were you thinking?

A:      That I was afraid.  I so badly wanted help but I was afraid of what was going to happen to me if I was discovered trying to get help.

5

The State argued that the evidence of the prior assault provided an explanation for Rodriguez's failure to call the police—her fear of retaliation. The trial court concluded that, based on the totality of arguments and questions, the door had been opened:

> I do believe the door has been opened. I do believe that the insinuation is that there was not a reach out for the police for one reason, and the State wants to give the other reason which is I didn't because I'm afraid because of a prior incident when I attempted to leave. I'll be honest, I'm troubled by that, but I think the State is correct and perhaps reluctantly I think they're right. I think the door has been opened, so I will allow them to ask.

The State then offered the evidence of the prior assault before the jury on re-direct examination:

Q:     Was there a previous incident when you tried to leave the defendant and were unable to?

A:     Yes, ma'am.

Q:     And can you explain your attempt to leave?

A:     I was trying to leave because Adam had been hitting me and I tried to step outside the door and try to walk out, and he pulled me right back in by my collar and continued.

Q:     Were you living at this apartment at the time?

A:     No, ma'am.

Q:     And when you were in that apartment on December 28th, 2008, you said you were scared before?

A:     Correct.

Q:     Is that one of the reasons why?

A:     Yes, ma'am.

6

*Analysis*

Stanley argues that the trial court abused its discretion because counsel's questions did not open the door for the admission of the prior assault evidence. He maintains that counsel's questions opened the door to Rodriguez's reasons for not reporting the assault the next day, but the extraneous assault explained her reasons for not leaving the apartment the night of the assault. He further asserts that his questioning did not leave a false impression on the jury. The State argues that the prior assault evidence had relevance outside character conformity and thus its admission did not violate Rule 404(b).

Texas Rule of Evidence 404(b) prohibits the admission of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character. *See* Tex. R. Evid. 404(b). However, when a party "opens the door," evidence that is otherwise inadmissible may become admissible. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). When a party opens the door, opposing counsel is permitted to present evidence to correct the mistaken impression. *Houston v. State*, 208 S.W.3d 585, 591 (Tex. App.—Austin 2006, no pet.); *see Hayden*, 296 S.W.3d at 554.

Furthermore, extraneous-offense evidence may be admissible when it has relevance apart from character conformity. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Extraneous offenses may be admissible for some other purpose such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b)*; Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990) (op. on reh'g). This

7

list is illustrative—the exceptions are neither mutually exclusive nor collectively exhaustive. *See De La Paz*, 279 S.W.3d at 343. Further, "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir.2000)). "The rule excludes only that evidence that is offered (or will be used) *solely* for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)) (emphasis added).

Extraneous-offense evidence may also be admissible to rebut defensive theories raised by defense counsel's cross examination of the State's witnesses. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (rebuttal of defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)"). In addition, the Court of Criminal Appeals has determined that extraneous offenses are admissible to rebut a fabrication defense. *De La Paz*, 279 S.W.3d at 350; *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (recognizing that even defense opening statement opens door to admission of extraneous-offense evidence to rebut defensive theory raised in statement).

Through cross examination Stanley sought to cast doubt upon Rodriguez's testimony by suggesting she did not act in the way an assault victim would act. Defense counsel's questions implied Rodriguez was not believable because a true victim of an assault would have called police immediately following the assault, left the apartment that night, or reported the assault to police the next day when she went to work. Counsel's questioning suggested Rodriguez did not immediately report the crime or otherwise act like a victim because, in fact, no assault was committed. Stanley's cross examination of Rodriguez—including the specific questions about her failure to call the police

8

from work the next day—opened the door to the extraneous prior assault. The State was entitled to counteract the impression which the defense had attempted to convey—that Rodriguez did not report the assault the next day because the assault did not happen—by providing an explanation that the fear of retaliation resulting from Stanley's actions following the prior assault contributed to Rodriguez's delay in reporting the assault to police. The trial court did not err in concluding that Stanley opened the door to evidence of the prior assault by deliberately questioning Rodriguez about why she failed to report the assault to police.

Moreover, throughout the course of trial, particularly through cross examination of Rodriguez and Lopez, Stanley advanced a fabrication theory entitling the State to offer the complained-of extraneous-offense evidence in rebuttal to explain why Rodriguez failed to "act" like a true assault victim—her failure to call police after the incident, leave the apartment that night, or report the assault the next day. In these circumstances, the extraneous-offense evidence was admissible for the non-character-conformity purpose of rebutting Stanley's defensive theory that Rodriguez was lying about the assault and had fabricated her testimony. *See De la Paz*, 279 S.W.3d at 346-47; *Bass*, 270 S.W.3d at 563. For these reasons, the trial court's decision to admit the evidence was within the zone of reasonable disagreement.

Stanley also argues that even if counsel's questioning opened the door to the prior assault, the evidence was nevertheless inadmissible under Rule 403. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. When undertaking a Rule 403 analysis, a trial court must balance

9

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Martinez*, 327 S.W.3d at 737. Further, Rule 403 does not require exclusion of evidence simply because it creates prejudice; the prejudice must be "unfair." *Martinez*, 327 S.W.3d at 737; *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Gayton v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd) (citing *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)); *see Davis*, 329 S.W.3d at 806.

Under the first two factors we examine the probative value of the evidence. The term "probative value" refers to "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Davis*, 329 S.W.3d at 806 (citing *Casey*, 215 S.W.3d at 879); *Gigliobianco*, 210 S.W.3d at 641. Under our analysis above we determined that the extraneous-offense evidence was probative of Rodriguez's failure to "act" like a victim and to rebut the defensive theory that Rodriguez fabricated the allegations. *See Newton*

10

*v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd); *Bargas v. State*, 252 S.W.3d 876, 892 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Further, the trial court could have concluded that the State's need for the extraneous-offense evidence was considerable. Whether the assault occurred at all was the contested issue. There were no eyewitnesses and limited physical evidence available to corroborate Rodriguez's testimony.[2] *See Newton*, 301 S.W.3d at 320; *Bargas*, 252 S.W.3d at 893. In addition, because Rodriguez conceded that she did not call the police even though she was scared, the State had a need to explain her behavior, especially given the fabrication defense.

"'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Casey*, 215 S.W.3d at 879 (citing *Gigliobianco*, 210 S.W.3d at 641). All testimony and physical evidence are likely to be prejudicial to one party or the other. *Davis*, 329 S.W.3d at 806. Under the third factor, we note that there is a tendency of evidence to suggest decision on an improper basis when the subject matter is that of prior criminal conduct, particularly when the offenses are similar. In this case, Rodriguez's testimony did pose a risk of prejudicing the jury. Likewise, with respect to the fourth factor, "confusion of the issues," there did exist a slight possibility that the jury would focus on the prior assaultive conduct instead of focusing on the charged offense.

---

[2] Three photographs admitted at trial reflected injuries to Rodriguez. However, testimony indicated that these photos were taken several days after the assault. During cross examination of witnesses, the defense suggested these injuries were attributable to a "subsequent incident" where Rodriguez sustained injuries that occurred on January 4, 2009—after the date of the instant assault but prior to Rodriguez reporting the assault to police. Apparently during this "incident," Rodriguez fell down a flight of stairs.

Under the fifth factor, we weigh any tendency of the evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence. This factor concerns "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641 (citation omitted). Here, the complained-of testimony was not prone to this tendency, as it concerned matters easily comprehensible by laypeople.

Finally, under the sixth factor, the State spent minimal time developing Rodriguez's testimony about the prior assault—three short questions and answers—and it was neither lengthy nor graphic; it is not likely that the jury was impressed in some irrational or indelible way. *See Bargas*, 252 S.W.3d at 893. Nor was the brief testimony repetitive of any other evidence.

Balancing all of the factors, we conclude that while evidence of Stanley's prior assault was obviously unfavorable to Stanley, it was not unfairly prejudicial. Accordingly, the trial court's decision to admit the evidence was not outside the zone of reasonable disagreement.

**CONCLUSION**

Having concluded that the trial court did not abuse its discretion by admitting the evidence of Stanley's prior assault against Rodriguez, we overrule Stanley's single point of error. We affirm the judgement of the trial court.

12

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   August 14, 2012

Do Not Publish