**Affirmed and Memorandum Opinion filed October 17, 2017.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00607-CR

---

### DANTAE HALL, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1465287**

---

## M E M O R A N D U M   O P I N I O N

Appellant Dantae Hall appeals his conviction for aggravated assault with a deadly weapon. A jury found appellant guilty and assessed his punishment at two years' confinement with a recommendation that he be placed on community supervision. The trial court accordingly placed appellant on community supervision for two years. In his sole issue on appeal, appellant challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim. Because of the

conflicting nature of the evidence adduced at trial and the jury's authority to resolve such conflicts, we overrule appellant's challenge and affirm.

### *Governing Law*

As charged in this case, a person commits aggravated assault with a deadly weapon if, while using a deadly weapon, he intentionally or knowingly threatens another with imminent bodily injury or intentionally, knowingly, or recklessly causes bodily injury to another. *See* Tex. Pen. Code §§ 22.02(a)(2), 22.01(a)(1-2). Under the Texas Penal Code, self-defense is a justification defense that excuses a person from criminal responsibility. *Id*. §§ 9.02, .31–.32. Section 9.31, entitled "Self-Defense," provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. § 9.31(a). Section 9.32, entitled "Deadly Force in Defense of Person," provides that

> [a] person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force.

*Id*. § 9.32(a).

To obtain a jury instruction on self-defense, a defendant first must acknowledge having committed the charged conduct. *Ex parte Nailor*, 149 S.W.3d 125, 132-33 & n.33 (Tex. Crim. App. 2004). The defendant then has the initial burden of producing some evidence supporting the self-defense claim. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). The State's burden is merely one of persuasion—i.e., to disprove the claim of self-defense once the defendant has raised evidence in support—and the State satisfies this burden by proving that the defendant is guilty beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910,

913 (Tex. Crim. App. 1991). The issue is one of fact, and the jury is free to accept or reject any defensive evidence on the issue. *Moralez v. State*, 450 S.W.3d 553, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). A jury's "guilty" verdict implicitly rejects a claim of self-defense. *Saxton*, 804 S.W.2d at 914.

When an appellant challenges the sufficiency of the evidence to support rejection of a self-defense claim, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the alleged offense and (2) against appellant on the self-defense issue. *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010); *Dearborn v. State*, 420 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2014, no pet.). As trier of fact, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Accordingly, we presume the jury resolved any conflicts in the evidence in favor of the verdict. *Bargas v. State*, 252 S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

### *Application to Facts*

Appellant's claim of self-defense relied heavily on his own testimony and that of his friend Brandon Lee, who allegedly witnessed the altercation with the complainant, Demontrice McDaniel. The State relied heavily on the testimony of McDaniel as well as that of Houston Police Officer Calab Bowling. A surveillance videotape and various photographs also were admitted into evidence.

In the early morning hours of April 19, 2015, appellant fired a pistol at McDaniel several times while McDaniel was sitting in his own vehicle. The incident occurred at a storage facility where appellant reportedly was working as a security guard and living in an onsite apartment he shared with Lee, the facility manager. Appellant does not dispute that he intended to shoot McDaniel, but he asserts his

3

action was justified because he reasonably believed deadly force was immediately necessary to protect himself against McDaniel's use or attempted use of unlawful deadly force.

In the hours before the incident, McDaniel, Lee, and appellant exchanged a series of text messages. McDaniel indicated that the messages primarily concerned his attempt to collect a debt from appellant, although appellant denied he owed McDaniel any money. At some point, McDaniel texted Lee, "Keep it cute, Ms. Thing. I will pop." Lee testified that he took this message as a threat and advised appellant to keep an eye out for McDaniel. McDaniel explained, however, that by "pop," he just meant something along the lines of how someone might discipline a child by "pop[ping them] on the hand." Appellant testified that he did not feel threatened as a result of these communications.

McDaniel then drove to the storage facility where Lee and appellant lived. According to Lee, he was downstairs in his apartment when he saw McDaniel pull into the parking lot, playing music, blowing the horn, and cursing for Lee to come outside. Appellant and Lee walked outside to tell McDaniel to leave the property. McDaniel became "really belligerent and irate," and appellant told him he was drunk and to go home. Further, according to Lee, McDaniel began revving his car engine like he was going to knock down the storage facility gate, and appellant jumped onto the hood of his own truck.

When appellant got down from the truck, McDaniel continued yelling and started waving a gun. Appellant then drew his own gun and said, "[t]his is your final warning." Lee reported appellant started walking towards McDaniel's car, telling him to leave, when McDaniel yelled and pointed his gun at appellant. Appellant then fired at McDaniel. After McDaniel left, appellant told Lee to call the police, but Lee suggested they just go to the police station because having police cars at the storage

4

facility might be bad for business. Lee further acknowledged that he picked up spent bullet casings and threw them in a dumpster, but he said he informed police of this when they arrived.

Appellant also testified that McDaniel had "flashed" a gun inside of his car, causing appellant to draw his own weapon. Appellant further stated that he did not think McDaniel would point his gun at him until he actually did. When McDaniel pointed the gun at appellant, appellant felt that he was in danger and fired his own weapon at McDaniel. Appellant additionally testified that he had seen McDaniel with a gun before and McDaniel had used the gun to threaten people.

The surveillance video shown to the jury shows McDaniel's vehicle parked at the storage facility. At one point, the vehicle backs up, and, shortly thereafter, appellant approaches the vehicle with his pistol drawn. The vehicle then drives away. The quality and lighting of the video is not sufficient to discern anything occurring within the vehicle, specifically whether McDaniel was in possession of a firearm. Photographs of McDaniel's car taken after the incident reveal bullet holes in the driver's side door, a wheel, and a rear taillight.

Officer Bowling testified that he responded to a 9-1-1 call and met with McDaniel in the early morning hours of April 19, less than a mile from the storage facility. McDaniel told Bowling he had just fled the storage facility after appellant had started shooting at him. Bowling observed a bullet hole in the front driver's side door and a small, fresh cut on McDaniel's shoulder. Bowling testified that he did not see a gun on McDaniel's person, but he acknowledged that he did not search McDaniel or his car. Bowling averred that he found McDaniel to be a credible witness.

After interviewing McDaniel, Bowling drove to the storage facility. Bowling said that appellant was not immediately straightforward with him when asked about

5

the incident, and Bowling noted that Lee had admitted to collecting bullet shell casings and throwing them away before the police arrived at the scene. Bowling averred that appellant and Lee did not seem to be as credible as McDaniel "because their story had changed a few times." In his testimony, McDaniel insisted that he had never owned a gun or even held one, and he specifically denied showing a weapon during his encounter with appellant.

Appellant's self-defense claim boils down to his assertion that he felt compelled to fire his pistol at McDaniel because McDaniel had pointed a gun at him. The only direct evidence that McDaniel possessed a weapon that night was the testimony of appellant and Lee. As sole judge of credibility, the jury was free to reject their testimony. *See Temple*, 390 S.W.3d at 360; *see also Saxton*, 804 S.W.2d at 913 (explaining that a jury is free to reject defensive evidence on a claim of self-defense); *Moralez*, 450 S.W.3d at 565, 567 (same). Moreover, as discussed above, McDaniel's testimony directly refuted that of appellant and Lee on the question of whether he possessed a gun that night. The jury was entitled to believe McDaniel's testimony over that of Lee and appellant. *See Temple*, 390 S.W.3d at 360. As also discussed above, Officer Bowling concluded McDaniel was more credible than appellant or Lee. Lastly, McDaniel explained his statement that he would "pop" in such a way as to negate any inference that he intended to shoot anyone. The jury was free to accept this explanation.

Examining all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the alleged offense, and against appellant on his self-defense claim, beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899, 912; *Dearborn*, 420 S.W.3d at 372. Accordingly, we overrule appellant's sole issue.

6

We affirm the trial court's judgment.


                                           /s/      Martha Hill Jamison
                                                   Justice


Panel consists of Justices Boyce, Jamison, and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).