COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ROSALIO TAVAREZ, | § | No. 08-22-00119-CR |
| Appellant, | § | Appeal from the |
| v. | § | 441st Judicial District Court |
| THE STATE OF TEXAS, | § | of Midland County, Texas |
| Appellee. | § | (TC# CR54935) |

## **O P I N I O N**[1]

A jury convicted Appellant Rosalio Tavarez of two counts of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B). The jury assessed punishment at 20 years confinement and a fine of $10,000 for the first count and 40 years confinement and a fine of $10,000 for the second. In his sole issue, Tavarez challenges the legal sufficiency of the evidence to support his conviction. We affirm.

## I. BACKGROUND

P.G.[2] is the complaining witness of the case. Although she was 18 years old at the time of trial, she was only 16 when she made an outcry of events she believed had occurred when she was

---

[1] We hear this case on transfer from the Eleventh Court of Appeals in Eastland and apply that court's precedent as required by TEX. R. APP. P. 41.3.

[2] Because the complaining witness was a minor at the time the offense was committed, we use initials, rather than a name, for privacy protection. *See* TEX. R. APP. P. 9.10(a)(3).

in third or fourth grade. At trial, P.G. testified she then lived with her mother, stepfather, and two sisters in a house in Midland County. P.G. described that she had always lived at the same house. At various times, she noted that other people had lived with her family including Tavarez. Tavarez was P.G.'s mother's cousin. Although P.G. considered Tavarez to be a babysitter or family friend, she also understood he was related to her mother. When Tavarez lived with her family, P.G. called him A.J. but he also had other nicknames. She explained they also called him "Nanny" because he would watch them when their mom was at work. They also called him "Pelon," which meant balding. At trial, P.G. identified Tavarez in the courtroom as the man she knew by those names.

P.G. testified that one day, when she got home from school, Tavarez was laying down in his room, next to P.G.'s sister. Tavarez told P.G. to come lay down and she did. She positioned herself between Tavarez and her sister. At the time, no other adults were in the home as her mother remained at work. P.G. testified it was not uncommon for her to lay down with Tavarez and watch TV. On this occasion, Tavarez started rubbing her side, then rubbed under her shirt. Tavarez then moved down her body and started rubbing underneath P.G.'s pants. Tavarez started rubbing P.G.'s vagina. Tavarez then grabbed P.G.'s wrist and made her touch his penis, making her hand rub it. He then continued to rub P.G.'s vagina with his hand. After a while, P.G. got up and left to the living room.

P.G. further testified that a few days later, Tavarez was watching TV in the living room as P.G. walked by on her way to her mother's room. P.G. recalls it being at night at a time when her mother was home. As she walked by, Tavarez told P.G. to come lay down and watch TV with him. P.G. did so because, she said, when an adult tells her to do something she does it. Tavarez began rubbing P.G.'s side and then under her shirt. He then moved down to her pants and started rubbing her vagina. P.G. testified he inserted his finger into her vagina. P.G. said she was going to get up and Tavarez asked her if she wanted him to insert his penis into her vagina. P.G. stated she said

2

no and ran to her room. P.G. stated she laid down and was crying when she heard the door open. She testified she thought it was her mother telling her to go to bed, but it was Tavarez. P.G. sat up on her bed and Tavarez closed the door. Tavarez told P.G. not to tell her mother or she would get in trouble. He then grabbed her hands and pinned them behind her, laying her down on the bed. P.G. stated she was wearing a nightgown which Tavarez pulled up by her waist. Tavarez took off her underwear and pulled his pants down. Tavarez then inserted his penis into her vagina, "moved forward and back a little bit," and then after two minutes stopped, pulling up his pants and walking out of the room. P.G. testified she felt a sharp pain and it hurt.

P.G. described that she was held back in second grade. Along with her testimony, the State also introduced into evidence a picture of her taken when she was much younger. P.G. testified she was about eight or nine years old in the picture and it depicted what she looked like at the time of the assault. Until her freshman year of high school, P.G. never told anyone about the assault. She participated in her school's ROTC military program. One day, when she was on a bus ride to the ROTC building, P.G. watched a video on Facebook of a girl telling her parents she had been raped. It was a video that randomly came up on her feed, not of anyone she knew. P.G. described it was uniform day, which meant she was assigned to wear a uniform on that day, but she had forgotten to put it on. She was already mad and frustrated because she had also gotten into an argument with her sister. P.G. testified once she arrived at ROTC, she suddenly broke down crying. She then told another student about her assault and the student told Sergeant Chick, an adult.

About a week after P.G. had revealed the assault, P.G. went to the Children's Advocacy Center for an interview. Erin Sabulsky was the forensic interviewer who conducted the interview. Sabulsky testified she was the first person that P.G. told in detail about the sexual assaults. P.G. told Sabulsky she was nine, ten, or eleven years old when the abuse occurred. P.G. told her that she was in second or third grade when the assault happened. P.G. remembered it happened in the

3

middle of April because three weeks later she went to Mexico for spring break. In her interview with Sabulsky, some of the details of the assault differed in that P.G. stated Tavarez inserted his fingers into P.G.'s vagina during the first incident. Also, P.G. told Sabulsky that, during the second incident, Tavarez pulled a condom out of his pocket and told P.G. he was "going to put it in her." P.G. then ran to her room and started crying. Once Tavarez followed P.G. into her room, P.G. told Sabulsky he grabbed a blue condom and put it on. After the incident, P.G. stated Tavarez threw the condom out the window and left her bedroom.

The State also presented the testimony of the Sexual Assault Nurse Examiner who performed the examination on P.G. Along with the examination, the SANE filled out a preliminary report which was admitted into evidence. In the report, P.G.'s description of the assaults matched what she described in her testimony at trial and in her outcry to Sabulsky.

Tavarez testified on his own behalf and denied committing the offenses. He further denied ever being alone with P.G. He described that P.G.'s mother had always remained in the home but in her own room. Tavarez's former girlfriend also testified that she met P.G. in 2017. On that occasion, P.G. greeted Tavarez with a hug while calling him "Nanny." As a rebuttal witness, P.G.'s mother testified that she occasionally left P.G. and her sister alone with Tavarez while she was at work.

The jury returned a verdict of guilty on both charges. The jury sentenced Tavarez to 20 years confinement for the first charge and 40 years confinement for the second, with a $10,000 fine assessed as to each charge. The trial court entered judgment in accordance with the jury's verdict.

## II. DISCUSSION

In his sole issue, Tavarez asserts the evidence produced at trial is insufficient to support the jury's verdict. Though Tavarez acknowledges there is no dispute over the alleged assaults

occurring in Midland County, he nonetheless contends there is insufficient evidence to support his conviction as to all remaining elements of the offenses.

### A. Standard of review and applicable law

In assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In conducting our review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. TEX. CODE CRIM. PROC. ANN. art. 38.04; *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits an aggravated sexual assault if he "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means . . . if . . . the victim is younger than 14 years of age." TEX. PENAL CODE ANN. § 22 .021(a)(1)(B)(i), (2)(B).

### B. Analysis

Tavarez was charged with two offenses. Count one required the State to prove that: (1) on or about April 15, 2010; (2) in Midland County; (3) Tavarez intentionally or knowingly caused the penetration of P.G.'s sexual organ with his finger or fingers; and (4) P.G. was a child younger than

5

14 years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B). Count two required the State to prove: (1) on or about April 15, 2010; (2) in Midland County; (3) Tavarez intentionally or knowingly caused the penetration of P.G.'s sexual organ by his sexual organ; and (4) P.G. was a child younger than 14 years of age. *Id.*

Tavarez complains that the evidence produced at trial was insufficient to establish the timing of when the alleged assaults occurred. He argues the differing testimony gives rise to reasonable doubt and makes it "almost impossible for [Tavarez] to defend himself against such a wide ranging timeline." Multiple witnesses testified regarding the time period of the assaults. First, interviewer Sabulsky of the Midland Child Advocacy Center testified that P.G. reported the assault occurred when she was nine, ten, or eleven years old, and in second or third grade. Based on the grade level described, Sabulsky believed the assaults could have happened when P.G. was seven or eight years old. By her experience, she said it was easy for children to not know what age they are in second grade. Conversely, P.G. testified that the assaults occurred when she was between eight and ten years old and in third or fourth grade. Finally, P.G.'s mother testified that she believed the assault occurred when P.G. was seven or eight and in second grade.

Tavarez points to the indictment, arguing it alleged the offenses occurred on or about a date in 2010. He argues this date places P.G. around six years old, which contradicts the evidence at trial to the extent it amounts to reasonable doubt for the jury. Moreover, Tavarez criticizes the scope of Sabulsky's interview of P.G., pointing out she failed to ask her to name all the persons who lived in the home at the time of the alleged assaults or otherwise ask whether other adult men had stayed with the family. He also argues that because the nurse examiner testified that the average time period for girls to start puberty is between ten and twelve years old, the evidence contradicted the State's allegation of timing in the indictment. Tavarez asserts the State failed to investigate or clarify the timing of the alleged assaults.

To further his argument, Tavarez cites *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997) (en banc), and argues that "[t]he date alleged by the State in the indictment serves as essentially a 'cut-off' date, allowing the State to prove action prior to that date, but not after that date." *Sledge*, however, does not include such a holding. Rather, courts recognize "[i]t is well settled that the 'on or about' language of [a charging instrument] allows the state to prove a date other than the one alleged as long as the date proven is anterior to the presentment of the indictment and within the statutory limitation period." *Loving v. State*, 630S.W. 3d 284, 290 (Tex. App. — Eastland 2020, pet. ref'd) (quoting *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000)); *see Sledge*, 953 S.W.2d at 255–56. Here, since there is no statute of limitations for aggravated sexual assault of a child, Tavarez was put on notice to prepare for proof that the crime happened any time *before* the presentment of the indictment. *See Wright*, 28 S.W.3d at 532; *see also Cruz v. State*, No. 11-17-00008-CR, 2019 WL 386537, at *5 (Tex. App.—Eastland Jan. 31, 2019, pet. ref'd). Accordingly, the evidence was sufficient to establish the timing element of the offense.

Tavarez also asserts there was no testimony that a condom was ever found in the yard outside a window as P.G. had described, or of other physical evidence supportive of the assaults for that matter. He also points out that P.G. did not recall the detail about the condom in her testimony at trial. Tavarez also states there was a contradiction between whether P.G. first told a fellow student or her ROTC sergeant. Tavarez also argues that there was no evidence from any other adult living in the home during the time period pertaining to the alleged assaults or the interaction between P.G. and Tavarez. Also, Tavarez argues there was reasonable doubt because the incident "seems like something that a person would make known to protect their younger sibling." On review, these arguments are not persuasive.

Physical evidence is not necessary to affirm a sexual assault conviction when the child victim provides ample testimony to establish that a sexual assault occurred. *See Bargas v. State*,

252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The uncorroborated testimony of a sexual assault victim alone is sufficient to support a conviction for aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. art. 38.07(a). Also, a child complainant's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (en banc). A child complainant's outcry testimony retains probative value even if other evidence contradicts it. *Bargas*, 252 S.W.3d at 888. Moreover, it is within the sole province of the jury to reconcile conflicts, contradictions, and inconsistencies in the evidence. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (en banc). The jury is also the judge of the credibility of the witnesses, and it is free to believe or disbelieve any portion of a witness' testimony. *Cain v. State,* 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997) (en banc). Here, being able to accept or reject any or all of the evidence on either side, the jury judged the credibility of the witnesses and reconciled any conflicts in the testimony. *Bowden,* 628 S.W.2d at 784; *Cain,* 958 S.W.2d at 408–09. When viewed in the light most favorable to the verdict, the jury, as rational trier of fact, could have determined that the essential elements of the offenses were met beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

We overrule Tavarez's sole issue.

### III. CONCLUSION

We affirm.


GINA M. PALAFOX, Justice

June 6, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

8